Solomon S. Masters and William K. Masters, trading as Partners under the Firm and Style of S. S. Masters and Son, Plaintiffs in Error, v. Frederick L. Barreda and Phillippe Barreda, trading as Partners under the Firm of F. L. Barreda and Brother.

When there is a dealing between merchants for successive cargoes of merchandise upon time, for which notes of hand were to be given, payable from the date of the ascertainment of the quantity of each cargo, and an arrangement is afterwards made for the substitution of an interest account for the notes which were to be given; and, in that arrangement, the seller stipulates that the allowance of the interest account should depend upon the continuance of the original time of credit, and that the buyer's balance on account should always be under a certain sum; and the buyer exceeds that amount and refuses to make a remittance or payment, upon the call of the seller, to bring the account within that sum, the seller may arrest the further delivery of any cargo or cargoes, though the same was in the course of being delivered to the buyer upon the seller's indorsement of the invoices and bills of lading of such cargoes.

In the absence of all understanding between the buyer and seller, that any cargo

which had been delivered and not actually paid for, though notes of hand had been given for the same, was not to be considered within the new arrangement, such cargo must be taken into the computation in ascertaining whether the balance due by the buyer exceeds the amount of credit allowed to him.

In this case, the true construction of the new arrangement is, that the existing notes of hand are to be counted as making a part of the limit which the buyer was not to exceed.

THIS case was brought up, by writ of error, from the circuit court of the United States for the eastern district of Virginia.

The facts of the case are stated in the opinion of the court.

Upon the trial in the circuit court, the counsel for the plaintiffs (the Barredas) and defendants offered several prayers to the court as instructions to the jury, which the court declined to grant, and instructed the jury as follows:—

"1. Under the contract made by the letters of the 9th, 10th, and 11th of March, the amount for the cargo of The Lucy Elizabeth, and for which notes had been given, must be taken into the calculation, and charged against the defendants, in determining whether the balance against them amounted to $40,000.

"2. If, in this mode of computation, the balance against the defendants for guano previously sold and delivered amounted to $40,000 at the time when the further delivery of the cargoes of The Beatrice and The Ailsa was refused by the plaintiffs, the refusal was justifiable under the contract. They were not bound, in such a state of the account, to deliver these cargoes on credit. And, if they offered to deliver them on the payment of the money or satisfactory security, and the defendants refused to comply with these terms, the plaintiffs had a right to stop the delivery, notwithstanding the previous indorsement and delivery of the bill of lading to the defendants; and the refusal as stated in the testimony is no breach of contract on the part of the plaintiffs, and is not a bar to the recovery in this action of the amount due for the guano actually received by the defendants."

To which instructions the counsel for the defendants excepted and the jury found a verdict for the plaintiffs for $74,636.13, with interest from 12th of September, 1854, till paid.

The case was argued in this court by *Mr. Johnson*, for the plaintiffs in error, and by *Mr. Carlisle* and *Mr. Bradley*, with whom was *Mr. F. L. Smith*, for defendants.

Mr. Justice WAYNE delivered the opinion of the court.

This is an action of *assumpsit* brought in the circuit court of the United States for the eastern district of Virginia, by the defendants in error, against Masters and Son, to recover from them a balance of $77,966.13, arising from the sales of guano,

as stated in the bill of particulars, at pages three and four of the record.

The transactions out of which this dispute arose commenced on the 21st of January, 1854.

Barreda and Brother, residing in the city of Baltimore, were largely engaged in the importation of guano into the United States. Masters and Son were shipping and commission merchants in Alexandria, Virginia. Barreda and Brother had found it necessary in conducting their business to establish a limit of credit, both as to time and amount for purchases made by those who dealt with them. For any excess above that credit, purchasers had to pay cash, or give satisfactory paper, with their indorsement. The uncontradicted statement of the Barredas, in their letter to Masters and Son of the 15th May, 1854, corroborated by other circumstances, shows, that in the year 1852, this limit of credit was $25,000; and that their dealings with the Masters from that time, up to the sale of two cargoes of guano on the 21st January, 1854, and afterwards, until changed by the letters between them of the 9th and 10th March, 1854, had been regulated accordingly.

The sale of the two cargoes of guano, just mentioned, is as follows :—

" We have sold to Messrs. S. S. Masters and Son two cargoes of Peruvian guano—from vessels Lucy Elizabeth three hundred and thirty-five tons, and Giaour two hundred and seventy-one— both on their way from Peru. The said guano to be delivered in the port of Alexandria, in Virginia, when the vessels may arrive. Messrs. Masters and Son will act as our agents to receive the cargo and attend to the vessels, free of any charge, and to pay the value of the guano they may receive, at the price of $47.50 per ton in bulk, in notes payable in Baltimore, four months after date.                 " F. BARREDA AND BROTHER.
"*Baltimore*, 21st January, 1854."

Subsequently to that date, (the precise time when does not appear from the record,) Masters and Son purchased from the Barredas another cargo of the ship Princess Alice, and on the 18th February a fourth—that of the ship Ailsa.

The Lucy Elizabeth arrived with her cargo at Alexandria on the 1st February. The Giaour, with hers, about the 10th of the same month. Masters and Son attended to unlading the cargoes of both vessels, and sent to the Barredas a certificate of the cargo received from The Lucy Elizabeth, on the 2d March, namely, 485.21.4 tons of No. 1 guano, (in bulk at $47.50 per ton,) and 25.1.21 tons of No. 2 guano in bulk, for which they were charged $24,108.64; the quantity of No. 2 being charged

to them at $42.50. They remitted to the Barredas on the 6th March, three notes of hand payable on the 2d and 5th of July; two of them for $8,000, and a third for $8,108.64; amounting to $24,108.64. Up to this time, the cargoe of The Giaour and The Princess Alice had not been ascertained, though both ships were then being unladed under the agency of Masters and Son, according to the arrangement in the memorandum of sale of the 21st January. And the correspondence shows that then there had not been any extension by the Barredas of the amount of credit, which had hitherto been allowed to Masters and Son upon their previous purchases. In this state of their dealing Masters and Son wrote to the Barredas on the 9th March: "As our purchases are likely to be pretty large this year, and we noticed, some time ago, that one of our mutual friends (H. W. Fry) had arranged with you to keep an interest account with him, at six per cent., and we, for the same reason, prefer not to give notes. Further, as it is at times an advantage to have it in our power to make payments when the local exchange is most favorable, we will be obliged, if you will allow us also this accommodation, giving us an average credit of four months on these other cargoes." To this letter Barreda and Brother reply on the 10th March. They state, we will "keep an interest account with you, at six per cent., to facilitate your payments, provided that you will never exceed an average time of four months for the payment of each cargo; and that the balance on account against you will always be under forty thousand dollars, being the largest credit we use to allow." The Masters' reply in a letter of the 11th March: "Your acceptance of our proposition, made with the view of our not having to pay the whole value of our purchases in notes, &c., is also duly appreciated—and we note the conditions regarding the open account."

At the date of this arrangement, there was charged to Masters and Son on the books of Barreda and Brother $24,108.64, the value of The Lucy Elizabeth's cargo, for which the Masters had given three notes, payable on the 2d and 5th July. Eighteen days after this arrangement the Masters send to the Barredas a certificate of Giaour's cargo, amounting to $17,094.34, and remit a payment on account of it of $6,000. The next item in the account is the value of the cargo of The Princess Alice, amounting to 38,029.92. But they had written to the Barredas on the 30th March, saying: "The Ailsa cannot now reach this too soon for us, and we prefer not relinquishing our purchase of the said cargo; and, further, we believe we are selling by considerable the bulk of the guano applied for here, (we wish it was at a better profit,) and find the demand good. From present pros-

pects we shall want a cargo each ensuing month. With your present unprecedentedly large importations, we suppose we can make our calculations to get this supply from you without having to look far ahead." The Barredas answer: "For the present, we have no cargo to offer you in the time you mention." But on the 18th April they write: "We will send you The Beatrice, reply immediately." Masters and Son write on the same day: "We will take The Beatrice;" and the Barredas rejoin: "Ship Beatrice will be ordered to you, provided she arrives before the end of May next." She arrived on the 24th April, and was ordered to Masters and Son. On the same day the Barredas ask in another letter: "Will you take The Ailsa if she arrives here?" The Masters answers: "Send The Ailsa if she comes as heretofore concluded upon." She arrived early in May, and was ordered to Alexandria. Thus, in the whole, five cargoes were bought by the Masters from the Barredas. Each of them upon a credit of four months, notes having been given for that of The Lucy Elizabeth, with the understanding by both parties that notes were not to be given for the other purchases, the quantities of which had not been ascertained when the arrangement of the 10th March was made, and that they were to be paid for according to that arrangement. But the value of three of the cargoes had been ascertained, amounting, according to the returns of Masters and Son to Barreda and Brother, to $79,232.90. Payments had been made to the amount of $29,000. On the 12th May the Barredas wrote, calling the attention of Masters and Son to the state of the account, and requesting them to make a remittance of $10,232.90, "as our limit in your account is $40,000, and it being then beyond the limit of the credit in the amount of the remittance asked for." In a postscript to the letter, they say: "Of course the value of The Beatrice and Ailsa cargoes must be paid cash. 2 P. C. off." To this letter the Masters reply without making the remittance, and say: "On the 9th March last, we had purchased from you four cargoes of guano, about 2,500 tons, or $120,000 worth, at four months—no other terms mentioned, (and to this moment we have never heard of any other,) three of the said cargoes were received and being received, and the fourth was daily expected. On the above-named date we asked you to allow us to keep an interest or open account with you, as we did not like to pay the whole value of our purchases in notes; to this you had no objection to the value of $40,000; the balance, as we had to infer, we must settle for agreeably to the original bill of purchase." To this letter the Barredas reply: "Yours of the 13th instant has been received. When we first went into business with you, we mentioned to you that our limit for credit was

$25,000, we making to you the sales of three, or four, or twenty cargoes, our impression would have been, as was in that case, that we were to accept your paper for $25,000, and the balance that you might owe in satisfactory paper with your indorsement. Certainly, you could never have expected us to accept your notes for such an amount as our sales, though your responsibility may be superior to it. Afterwards, when you proposed to open with us an account, with interest, to facilitate your payments, we agreed to it; provided, that you would never exceed an average time of four months for the payment of each cargo, and that the balance on account against you will always be under $40,000—this being the largest credit we use to allow. You also understood in the same way our conditions, and took good care to make a remittance of $6,000, together with the return of The Giaour's cargo, to keep yourselves within the limits of your credit with us." In a few days after writing their letter of the 17th, Barreda and Brother made an effort through the agency of Mr. Coyle, to have an amicable settlement with Masters and Son, offering to them either of the following propositions: That they would deliver to Mr. Coyle all the guano received from The Beatrice and Ailsa, and such a portion of the cargo of The Princess Alice as may be necessary to cover the $10,234.90 of excess of their account—or settle their values in cash, less two per cent.—or give satisfactory paper with their indorsement, payable in New York or Baltimore, at four months from the day when the offer was made, that being the 22d of May.

Neither of these propositions were accepted, and this suit was brought to recover the balance on account against Masters and Son, including the value of all the guano they had received from The Lucy Elizabeth, The Giaour, Princess Alice, Beatrice, and Ailsa, after having given to them credit for payments made. There is no dispute concerning either the debit or credit side of the account, but the controversey arose from the different view entertained by the parties as to their respective rights under the arrangement made for an interest account and the limit of credit mentioned in it, and whether, in the actual state of the account and under the course pursued by the Barredas, they were justified in arresting the delivery of the undischarged portions of the cargoes of The Beatrice and Ailsa, on account of the neglect and refusal of Masters and Son to make the required remittance to reduce the account against them to $40,000.

Our first objection to the construction of that arrangement as given by Masters and Son, is its variance from the terms used by them in their letter of the 9th of March, asking for the sub-

stitution of an interest account, instead of giving notes for their purchases, and from their language in their letter of the 11th March, in reply to the letter of the Barredas of the 10th, granting their request upon the conditions mentioned in it. They preface their application by saying, " as our purchases will be very large this year, we prefer not to give notes, and will be obliged if you will allow us an interest account, giving us an average credit of four months on these other cargoes ; and in their letter of the 11th say, your acceptance of our proposition, made with the view of our not having to pay the whole value of our purchases in notes, &c., is also duly appreciated, and we note the conditions regarding the open account." If from the first an application may be made that it was their intention that the favor asked by them was to be applied to future purchases, and not to include purchases which they had made and which had not been paid for, there can be no doubt that their understanding of the arrangement was, that it was to include both, when in thanking the Barredas for their acceptance of their proposition, they state it was made with the view of their not having to pay the whole value of their purchases in notes. Besides having applied the arrangement to their purchases of the cargoes of The Giaour and Princess Alice, both of which had been bought, but neither of which had been ascertained when they asked for an interest account, and when it was granted, they could not afterwards give to the arrangement an exclusive application to cargoes to be thereafter bought; and when they say their request for an interest or open account had been made with the view of not having to pay the whole value of their purchases in notes, and afterwards say, " we note the conditions regarding the open account," one of them being that the balance on account against them shall never be larger than $40,000, it is conclusive that they then understood that amount to be the extent of their credit for all of their purchases, according to the account as it then stood on the books of the Barredas, or as it might be enlarged.

But it was urged that the limit of the amount of their credit was not to exceed at the time when the Barredas wrote their letter of the 12th May. It was said that the amount then still due for the cargo of The Lucy Elizabeth should not have been taken into the computation in ascertaining whether the balance due by the Masters amounted to more than $40,000, because that cargo had been sold under a different contract, in no way connected with the other purchases. Such, however, was not the fact, for The Giaour's cargo was bought under the same memorandum of sale ; and the cargo of The Princess Alice had been bought before the cargo of The Giaour had been ascer-

tained; and the Masters, after the arrangement had been made for an interest account, applied it to both, when their cargoes were ascertained, by not giving notes for either, and transmitting their certificates of the quantity of each, without any direction that a new and separate account of their cost should be made of them distinct from the debit against them in the books of the Barredas for the cargo of The Lucy Elizabeth. Had it been intended otherwise, they should have given such a direction; and not have said, we note the conditions regarding the open account, the limitation of the credit to be allowed being one of them, expressed in language so plain that it cannot be doubted that the Barredas never meant to give to Masters and Son a larger credit upon their purchases than $40,000; and that, when their account exceeded it, they were to have the right to call for payments to reduce it to that amount. When they called for the remittance of $10,232.90, the account against Masters and Son exceeded it by that amount. They failed to make the payment, and continuing to refuse to do so, we are of the opinion that the Barredas had a right to arrest the delivery of the cargoes of The Beatrice and Ailsa, notwithstanding the indorsement and delivery of the bills of lading to Masters and Son, and that their refusal to deliver the same, as stated in the testimony, is no breach of contract, and is not a bar to the recovery in this action of the amount due for the guano actually received by Masters and Son. Such was the instruction given by the court upon the trial of the case in the circuit court; and, having expressed our concurrence with that view, we will only add, that when there is a dealing between merchants for successive cargoes of merchandise upon time, for which notes of hand were to be given, payable from the date of the ascertainment of the quantity of each cargo, and an arrangement is afterwards made for the substitution of an interest account for the notes which were to be given; and, in that arrangement, the seller stipulates that the allowance of the interest account should depend upon the continuance of the original time of credit; and that the buyer's balance on account should always be under a certain sum; and the buyer exceeds that amount, and refuses to make a remittance or payment, upon the call of the seller, to bring the account within that sum, the seller may arrest the further delivery of any cargo or cargoes, though the same was in the course of being delivered to the buyer upon the seller's indorsement of the invoices and bills of lading of such cargoes.

In the absence of all understanding between the buyer and seller that any cargo which had been delivered and not actually paid for, though notes of hand had been given for the same,

was not to be considered within the new arrangement, such cargo must be taken into the computation in ascertaining whether the balance due by the buyer exceeds the amount of credit allowed to him,

Judgment of the circuit court is affirmed.