OLMSTEAD v. DISTILLING & CATTLE–FEEDING CO. GRAVES v. SAME. BAYER v. SAME.

(Circuit Court, N. D. Illinois. June 24, 1895.)

1. CORPORATIONS—QUO WARRANTO—EFFECT OF APPEAL.
A judgment of ouster in quo warranto proceedings against an Illinois corporation goes into effect from its, rendition, and is not suspended or annulled by an appeal to the state supreme court, pursuant to Rev. St. Ill. c. 112.

2. SAME—EQUITY JURISDICTION—APPOINTMENT OF RECEIVERS.
The Illinois statute relating to corporations provides that corporations organized thereunder, whose powers have expired "by limitation or otherwise," shall continue their corporate capacity, with the use of their names, for two years, for the purpose of settling up their affairs, conveying property, prosecuting or defending suits, and that dissolution for any cause whatever shall not impair any remedies against it, or its officers or stockholders, for liabilities incurred before dissolution. Rev. St. Ill. c. 32, §§ 10–12. *Held* that, upon a judgment of ouster in quo warranto proceedings, the corporation itself becomes a trustee for its creditors and stockholders, so that equity will have jurisdiction, on the ground of the trust relation, of a suit by a stockholder, in behalf of himself and other stockholders who may join with him, for the appointment of receivers to administer its assets, where proper averments are made showing that the corporation's affairs are involved, and its property in danger of being seized and dissipated, by means of attachments, executions, etc. Bacon v. Robertson, 18 How. 480, applied.

3. SAME—STOCKHOLDERS' AND CREDITORS' BILLS.
Even when a receiver is appointed for a corporation, upon an erroneous assumption of the court that the bill discloses a case of equitable jurisdiction, such appointment cannot be questioned collaterally; and, if no objection is made by any one to such appointment, •the court will have jurisdiction of a creditors' bill subsequently filed, even though it does not appear that such creditors have exhausted their legal remedies. Brown v. Iron Co., 10 Sup. Ct. 604, 134 U. S. 530, followed.

4. JUDICIAL SALE—PURCHASE OF CORPORATE PROPERTY.
Where the property of a corporation is to be sold in judicial proceedings, the court cannot entertain objections to the purchase thereof by a committee of stockholders, founded upon the theory that the corporation had attempted to create a trust or monopoly, and that the proposed purchasers would also endeavor to monopolize the business. The court cannot assume that any improper use will be made of the property, or undertake to control it after it has been sold and conveyed by the receiver.

These were three bills, filed, respectively, by John F. Olmstead, Chester H. Graves, and Stephen D. Bayer, against the Distilling & Cattle-Feeding Company, which have been consolidated and heard as one cause. For a decision on a motion for removal of receivers, see 67 Fed. 24. The cause is now heard upon the petition of Richard B. Hartshorn and others, constituting a reorganization committee, for a judicial sale of the property of defendant company.

Moran, Kraus & Mayer and John P. Wilson, for petitioners.

Walker & Eddy, Dupee, Judah, Willard & Wolf, and Runnells & Burry, contra.

SHOWALTER, Circuit Judge. Certain stockholders of defendant company now petition the court to sell certain distilleries, being part of the estate of the defendant corporation in the hands of the receiver heretofore appointed in said consolidated causes. They offer to buy said property, bidding therefor the sum of $9,800,000, on terms and conditions which will be spoken of presently. Certain other stockholders and creditors of said defendant company oppose said sale. They contend: (1) That the court has no jurisdiction to order such sale; (2) that it would be error for the court to order such sale, at the present stage of the litigation, and before the claims have been ascertained; (3) that the petitioners ought not to be permitted to buy, or that the property in question ought not in any event to be alienated to said petitioners.

The jurisdiction of the court over the property, and the interests therein of the litigants, may be referred to any one of the three consolidated causes. In the Olmstead bill which was the first proceeding, it is set forth that Olmstead, a citizen of New York, is a stockholder of the defendant company, which is an Illinois corporation; that defendant has a large amount of property in Illinois and other states, including the distilleries in question, which are going concerns; that defendant has a great number of creditors and outstanding contracts; that its affairs are greatly involved; that it is much embarrassed financially, and will be unable in future to meet its pecuniary obligations; that, pursuant to a quo warranto proceeding commenced in the circuit court of Cook county, Ill., against defendant, to deprive it of its charter, a judgment of ouster had been lately rendered; that an appeal was perfected in said quo warranto proceeding from said circuit court to the supreme court of Illinois; that said appeal is still pending and undetermined; that said judgment of ouster remains in full force and effect; that divers creditors of defendant threaten and are about to commence suits, by attachment and otherwise, against defendant, in Illinois and in other states; that by reason of executions and attachments in such suits the property of defendant will be wasted and destroyed to such a degree as to make the same inadequate and insufficient to pay its debts; that, if a receiver be appointed by this court, to take and conserve and distribute the estate of defendant, and if said creditors be in the meantime enjoined from such proceedings at law, said estate will pay all the creditors of defendant in full, leaving a balance to be divided among its stockholders,—and an injunction and receiver are thereupon prayed for. Said Olmstead filed this bill, to which the said Distilling & Cattle-Feeding Company was made sole defendant, on behalf of himself and all other stockholders who might choose to join with him in that behalf. On the filing of this bill a receiver was, or rather receivers, to whom the present receiver is successor, were, appointed by the consent of the defendant corporation. Said receivers took possession, and their successor now holds all the assets and property of the defendant corporation in the state of Illinois, and all its property in other states by force of judicial proceedings in such states ancillary to this proceeding. This court thereupon commenced, and has thenceforward and up to the

present time proceeded with, the administration of the estate of the defendant; and claims against the property in the hands of the receiver have been filed with the master, pursuant to the order in that behalf of this court, by some 3,000 claimants.

It is now said that there is no jurisdiction, meaning that there is not, and never was, any power in this court to make any order or do anything whatever in the matter of this estate. The appeal bond in the quo warranto suit suspended all such further proceedings as were authorized in enforcement by the said circuit court of Cook county of its judgment in said suit. No execution could rightly issue for the costs, or a fine, if one were adjudged in said quo warranto proceeding, pending the appeal. But I am unable to find anything in any statute of Illinois which in any manner annulled or suspended the effect of Judge Gibbon's judgment in the (state) circuit court, so far as it fixed, as from the date of its rendition, the status of the defendant corporation. The statute concerning quo warranto proceedings (chapter 112 of the Revised Statutes of Illinois) provides that, in such proceedings, appeals and writs of error may be taken and prosecuted in the same manner and upon the same terms and with like effect as in other civil cases. The pleadings and procedure in such cases are also analogous to pleadings in other cases at law. Within the rules touching the effect of appeals, as stated in Oakes v. Williams, 107 Ill. 156, the judgment of the circuit court, so far as it declared the status of the defendant corporation, went into effect as soon as rendered, subject, merely, to possible reversal by the supreme court.

Section 10 of chapter 32 of the Revised Statutes of Illinois, on the subject of corporations, is in words following:

"All corporations organized under this law whose powers may have expired by limitation or otherwise, shall continue their corporate capacity during the term of two years for the purpose only of collecting the debts due said corporation and selling and conveying the property and effects thereof."

Section 11 is in words following:

"Such corporations shall use their respective names for the purpose aforesaid and shall be capable of prosecuting and defending all suits in law or equity."

Section 12 is in words following:

"The dissolution for any cause whatever of any corporation created as aforesaid shall not take away or impair any remedy given against such corporation, its stockholders or officers for any liabilities incurred previous to its dissolution."

The corporation in question was organized under the general corporation law of the state of Illinois, from which the foregoing sections were quoted. The effect of the quo warranto judgment, in view of said enactments, was to make of the defendant corporation a trustee. I do not think, as was argued here, that the directors of said corporation became trustees. It seems to me that, within the sense of the statute, the corporation itself became a trustee as soon as the judgment of ouster was rendered. The property of said corporation thereupon became at once a trust property, and the stockholders and creditors became at once the beneficiaries or equi-

table owners thereof. Prior to the judgment of the circuit court, the defendant corporation owned its property legally and equitably. After the judgment the equitable ownership ceased in the corporation, and became at once vested in the creditors, and, subject to their rights, in the stockholders. On this view of the law, the Olmstead bill showed, not only jurisdiction in the court, but a good and valid cause of action in equity. Upon the averments of that bill creditors had no right of priority over each other. The remedy of each, as against the corporation, is preserved; but they had no right, as against each other, to seize and squander, through executions and attachments, the property of the defendant. The corporation itself, on the showing of that bill, acting through its directors,—though, if unmolested by executions and attachments, said directors might under the statute have administered and wound up its affairs,—was unable to execute and carry out the trust.

But the jurisdiction of this court did not depend on the failure or inadequacy of legal or statutory remedies. The matter of trusts falls within the equitable cognizance of this court. The power to adjudicate concerning the same belongs to this court as of course, and as part of its original jurisdiction. I may add, further, that section 25 of the chapter on corporations in the Revised Statutes of Illinois does not meet the case of a corporation deprived of its charter by a judgment of ouster in a quo warranto proceeding, nor, if it did, would said section have any force as against the chancery powers of this court. It seems to me, therefore, that this court not only had jurisdiction to take control of the estate of defendant by a receiver, pursuant to the prayer of the Olmstead bill, but, as stated, that said bill showed a good cause of action in equity. The case, so far as the matter of jurisdiction is concerned, is like Bacon v. Robertson, 18 How. 480. There a judgment of ouster had been rendered against a corporation in Mississippi. Pursuant to a statute of that state, a person was named, and by the court which rendered the judgment of ouster, as trustee, to take the estate and effects of the corporation, and administer the same. While this trustee was selected by the court, he derived his powers from the statutes in that behalf of Mississippi, and not from the court: the court acting, in his appointment, ministerially, rather than judicially. Said trustee thereupon took possession of the estate of the corporation, and proceeded in the administration of the same. He collected its debts, and was authorized by law to apply to the court for an order directing a sale of the same. He failed or neglected to sell, or to apply for such order, and, at the time of filing the bill in the United States court, was still in the possession of the property. Suit was brought in said federal circuit court by stockholders of the corporation, nonresidents of Mississippi, on behalf of themselves and all other stockholders who might choose to join with them. The supreme court of the United States declared that the circuit court had jurisdiction to take charge of the estate and distribute it among the persons to whom it belonged. That case, therefore, as already stated, was identical with this, so far as the question of jurisdiction was concerned. There, upon the dissolution of the corporation, a per-

son was appointed, as trustee, to take charge of and administer the trust estate. Here, by our statute, the corporation itself, when the judgment of ouster was rendered, became the trustee, for the purpose of converting and dividing its property among the persons who were entitled to receive the same.

Even if no cause of action were shown on the face of the Olmstead bill,—that is to say, even if the judge who appointed the receiver erred in his assumption that a cause of action was shown,—he still had jurisdiction, or the power, to appoint the receiver, according to the decisions of the supreme court of the United States. This being so, the appointment of the receiver could not be questioned collaterally; and the Graves bill, the second of these consolidated causes, on this theory, shows a cause of action in equity, and jurisdiction in the court to appoint the receiver. The Graves bill is an ordinary creditors' bill, filed by a judgment creditor, on behalf of himself and all other creditors similarly situated.

If, however, we assume that there was no jurisdiction in the court to appoint a receiver pursuant to the Olmstead bill, then the Graves bill would not show a cause of action in equity, because, on the face of said bill, it would not appear that the complainant had exhausted his remedies at law. If the court were without jurisdiction to appoint a receiver in the Olmstead bill, then Graves' execution might have been levied, and he had failed to exhaust his remedies at law. But the receiver was appointed in the Graves case without objection on the part of the defendant corporation, or any person in its behalf, and the administration of the estate through the receivership has proceeded, without objection to the jurisdiction, up to the present time. The Graves bill showed a cause of action at law; that is to say, it showed that Graves had a valid claim against the estate, and was entitled to collect it out of the assets of the corporation. Upon this assumption, and in the absence of any objection, the law is well settled that the appointment of the receiver was within the power and jurisdiction of the court. Not only so, but such appointment cannot now be insisted on even as error. On the theory last supposed, the Graves case becomes identical with the case of Brown v. Iron Co., 134 U. S. 530, 10 Sup. Ct. 604. That case was a bill filed by a judgment creditor who had not sued out execution, and with whom was joined, as complainants, contract creditors who had not as yet even obtained judgments. A receiver was appointed, who took charge of the property of the defendant corporation without objection, divers claimants afterwards filed claims, and it was held, by the supreme court of the United States, not only that the court had jurisdiction, but that the cause of action would go on the equity side of the court notwithstanding the failure to show that the remedy at law had been exhausted.

I am confident that the objection here made to the jurisdiction is invalid. I am of the opinion, also, that the property bid for may be now sold. The question is one of expediency in the administration of the estate. From the report made by the receiver, it will be extremely inconvenient, if not impracticable, for him to care for the distilleries in question, and keep them in operation through an-

other season. For him to make cattle-feeding contracts, and attempt to run the distilleries another year would involve the estate in an expense that could hardly be justified. Within the authority of such cases as Crane v. Ford, Hopk. Ch. (3d Ed.) 130, Forsaith Mach. Co. v. Hope Mills Lumber Co., 109 N. C. 576, 13 S. E. 869, and Bank v. Shedd, 121 U. S. 74, 7 Sup. Ct. 807, I think it is competent for the receiver to sell any part of the estate, and hold the proceeds for the benefit of such claims as may be adjudged valid.

The objection that the property ought not to be sold to these petitioners proceeds, apparently, upon the ground that the corporation attempted to create a trust or monopoly in that kind of property, and that these petitioners, representing upwards of 347,000 of the shares of the stock of defendant, were responsible for the unlawful conduct of the corporation,—upon the surmise that these petitioners are themselves, now and by this proposed purchase, attempting to monopolize the distillery business. It seems to me that there is no validity in this objection. In making their offer for this property, these petitioners are simply shareholders. In that capacity they are interested in the property in question, and have the right to preserve the same by buying it from the receiver, if the latter can be induced and empowered to sell. The court cannot assume that any improper use will be made of this property by the purchasers, nor can the court undertake to control the use of the property after it has been sold and conveyed by the receiver.

I am disposed to make the order of sale, and to accept the bid made by this reorganization committee upon the terms proposed by them, but upon the further understanding that they take the care and management of the property in subordination to the possession of the receiver until the payments which they propose to make shall have been made. In order to preserve the liens which now exist, I am disposed to insist that the paramount possession of the receiver be maintained. The petitioners say that they have collected a fund of $1,400,000, and that they intend to give security conditioned that they shall make to the receiver, or his successor, the payments as proposed. I understand, from this, that they mean to give bond to secure these payments. If they are willing to do that, and to take the care and use of the property in subordination to the possession of the receiver, so that the court shall not lose the control of the property in this proceeding, I think the order for sale may be made.