GRANT, RECEIVER OF THE STRUTHERS FURNACE COMPANY, *v.* A. B. LEACH & COMPANY, INCORPORATED.

No. 9. Argued April 11, 12, 1929.—Decided January 6, 1930.

*Messrs. James P. Wilson* and *A. M. Henderson* for petitioner.

*Mr. Edward R. Johnston,* with whom *Messrs. Wm. L. Day, Donald W. Kling, Conrad H. Poppenhusen, Floyd E. Thompson,* and *Henry Jackson Darby* were on the brief, for respondent.

MR. JUSTICE SANFORD delivered the opinion of the Court.

Grant, a citizen and resident of Ohio, was appointed by the Common Pleas Court of Mahoning County in that State, receiver of the property and assets of the Struthers Furnace Co., an Ohio corporation. Thereafter, pursuant to an order of that court so directing, he brought this suit in equity against Leach & Co., a New York corporation, in the Federal District Court for the Eastern Division of the Northern District of Ohio,[1] to recover certain mort-

---

[1] Mahoning County is included in the Eastern Division of the Northern District, and a stated term of the District Court is held therein.

gage bonds of the Furnace Company, or their value. The District Court gave decree in favor of the Receiver. The Circuit Court of Appeals vacated this decree and dismissed the suit, on the ground that it was beyond the power of the Common Pleas Court to authorize the Receiver to bring it. 27 F. (2d) 201.[2]

1. The bonds in question were part of an issue of eight per cent bonds of the Furnace Company, secured by a mortgage upon certain real and personal property. In 1922 Leach & Co. purchased from the Furnace Company a large number of these bonds, at 90½ and accrued interest, for which it paid partly in shares of the seven per cent preferred stock of the Furnace Company, at 85 and accrued dividends, and partly in cash.[*]

In 1925 the trustee under the mortgage brought suit in the Common Pleas Court against the Furnace Company for foreclosure. The verified petition alleged that the Furnace Company had defaulted in semi-annual interest on the bonds, and all the outstanding bonds had

---

[*] This sentence conforms with an amendment made by order of February 24, 1930. Reporter.

[2] The record here consists in part of copies of orders and proceedings in the Common Pleas Court, which were filed in the Circuit Court of Appeals, for its consideration, pursuant to a stipulation of the parties. The Circuit Court of Appeals, after stating that no issue had been made in the evidence in the District Court as to the receiver's authority to bring the action, said: " We preferred not to decide it upon a construction of the pleadings, and hence we suggested to counsel that they file certified copies of any orders or proceedings had in the common pleas court, where the receiver was appointed, and stipulate that this court might consider such orders or proceedings in determining the question on its merits. This suggestion has been acted upon, and certified copies of all pertinent pleadings and orders have been filed." And we have likewise considered the orders and proceedings in the Common Pleas Court, with like effect as if they had been offered in evidence in the District Court.

been declared due and payable. It prayed that judgment be given for the amount of the bonds and interest, that the mortgaged property be sold and the proceeds applied to the payment of the outstanding bonds, that a receiver be appointed to take charge of the " property of the defendant " and manage the same and collect the rents and incomes therefrom, and that he be ordered to set apart and sequester all amounts so received from any of the mortgaged property for the payment of the bonds; and for general relief.

On the same day a preferred stockholder of the Furnace Company, brought suit in the Common Pleas Court against the Furnace Company and the mortgage trustee. The verified petition alleged that the Furnace Company, owing to prevailing market conditions and want of capital, had been compelled to close down its plant and cease operations, had been unable to pay the semi-annual interest on its bonds, was indebted in the sum of $1,500,000 on the bonds, had no funds with which to pay the same and accruing interest, was indebted on past due notes and other current obligations in a sum exceeding $2,000,000 which it could not pay, was unable to finance its obligations, and would be subjected to suits, judgments, and executions and the sale of its property and assets, and that for the protection of bondholders, stockholders and creditors of the Company it was necessary that a receiver be appointed to take charge of and conserve its plant and property until its financial requirements could be provided; and prayed that the court appoint a receiver to take charge of its property and assets, and for general relief.

These causes came on to be heard on the petitions for the appointment of a receiver, whereupon the court consolidated them in so far as the question of the appointment, acts and duties of a receiver were common to both. And, finding that there was urgent exigency for the im-

mediate appointment of a receiver in the two cases to preserve the property and assets of the Furnace Company, the court granted the prayers of the petitions, appointed · Grant receiver in both cases, and directed and empowered him to take possession of all the property designated in the trustees' petition, together with all other property, both real and personal, of the Furnace Company, including its books and papers, to do all things necessary in order properly to preserve and protect the assets and property for the best interests of all parties interested therein, and to manage and control the same and collect the rents and income therefrom.

Thereafter Grant applied to the Court for an order granting him as Receiver authority to bring suit in the Federal District Court against Leach & Co., on the ground that it, under an *ultra vires* and illegal contract, had received bonds of the Furnace Company in exchange for preferred stock; and represented to the court that he should recover for the benefit of the stockholders and creditors of the Furnace Company the value of such bonds, or the bonds themselves, and that it would be to the material benefit of the stockholders and creditors if leave to commence such suit were granted. Upon hearing this application, the court, finding that it was for the best interests of the creditors and stockholders of the Furnace Company that such suit be commenced, authorized and directed the Receiver to commence the suit against Leach & Co., praying for such relief as should be obtained against it, in order to reimburse the Receiver for the apparent unlawful and illegal issue of the bonds by the Furnace Company to Leach & Co. in consideration of the preferred stock.

In his petition in the District Court Grant alleged that he was the receiver of all the assets, choses in action and other property of the Furnace Company, duly appointed by the Common Pleas Court, and brought the suit by

virtue of authority so to do granted to him by that court; and that the Furnace Company was without authority to exchange its bonds for its stock. He prayed that the court order Leach & Co. to surrender and deliver to him the bonds that it had received from the Furnace Company in exchange for the stock, or, if it had disposed of the bonds and could not redeliver them, to pay him their value, upon the surrender of the stock; and for general relief. Leach & Co., answering the petition on the merits, admitted that the petitioner was duly appointed receiver of all the assets, choses in action and property of the Furnace Company by the Common Pleas Court, but stated that it had no knowledge or information as to the authority granted to him by that court to bring the action, and therefore neither admitted nor denied that allegation but required the plaintiff to make strict proof thereof. This, we think, under the 30th Equity Rule,[3] put in issue the allegation that the action was brought under authority granted by the Common Pleas Court.

At the hearing, the District Court, after stating that the plaintiff was the receiver of the Furnace Company, duly appointed by the Common Pleas Court, and as such possessing all the powers conferred by statute and general principles of equity on a receiver—without referring to the question whether he had been authorized to bring the action[4]—found, upon the evidence, that the transaction

---

[3] This Rule provides that: "The defendant in his answer shall in short and simple terms set out his defense to each claim asserted by the bill . . . specifically admitting or denying or explaining the facts upon which the plaintiff relies, unless the defendant is without knowledge, in which case he shall so state, such statement operating as a denial. Averments other than of value or amount of damage, if not denied, shall be deemed confessed, except as against an infant, lunatic, or other person *non compos* and not under guardianship . . ."

[4] No evidence had been offered upon this issue in the District Court; but the absence was fully supplied, by concurrence of both parties, in the Circuit Court of Appeals. See Note 2, *supra.*

by which the bonds were delivered to Leach & Co. violated numerous principles of corporation law, justice and honesty, was a gross fraud upon other preferred stockholders, and could not be sustained against creditors; and, as it appeared that Leach & Co. had disposed of the bonds to innocent purchasers, gave decree against it in favor of the Receiver for their value, with the interest on them that had been paid to Leach & Co.

On appeal by Leach & Co., the Circuit Court of Appeals held, in substance, that the powers of the Receiver were limited to the purposes of the suit in which he was appointed, and the Common Pleas Court could confer upon him authority to do only such acts as were within the scope of its jurisdiction as limited by such purposes; and that since there was no object or purpose in them that could be served by the bringing of the suit against Leach & Co., the court was without authority to direct him to bring it, and the purported authorization so to do was beyond its power. And, without passing upon the merits of the receiver's claim, the decree of the District Court was reversed and the suit dismissed.

2. Upon these facts we conclude that the Circuit Court of Appeals was in error in reversing the decree of the District Court and dismissing the Receiver's action, without consideration of his claim upon the merits. While the argument in this Court has covered a wide range, we do not find it necessary to state more than the controlling reasons which lead us to that conclusion.

The Common Pleas Court by its order had in fact authorized and directed Grant, as receiver, to bring the action in the District Court. The Common Pleas Court had previously appointed him receiver of all the property of the Furnace Company, both real and personal, and had directed and empowered him to take possession thereof and to do all things necessary to preserve and protect it for the best interests of all parties interested therein.

The claim against Leach & Co. arising out of the exchange of bonds for preferred stock, was a chose in action of the Furnace Company, and as such was a part of the property of which he had been appointed receiver.

The Common Pleas Court had jurisdiction of the petitions for the appointment of a receiver in the suits of the mortgage trustee and preferred stockholder; and the power to determine whether, under the allegations of the petitions, it was authorized to appoint a receiver of the Company's property; to what extent and for what purposes; and what authority should be vested in him as such receiver.

Section 11894 of the General Code of Ohio provides that the Common Pleas Court may appoint a receiver in causes pending therein in certain designated cases, and " 6. In all other cases in which receivers heretofore have been appointed by the usages of equity."

It is questioned whether under this statute the court rightly appointed, under the petition of the mortgage trustee, a receiver of the portion of the Furnace Company's property which was not covered by the mortgage; and it is asserted that under the petition of the preferred stockholder, in which no other relief was prayed, the appointment was erroneous, under the decisions of the Ohio courts. But, however this may be, the court had jurisdiction and the power to determine these questions. And even if the order appointing the receiver was erroneous and might have been vacated in part in a direct attack, as upon an appeal by the Furnace Company, its validity was not challenged in any respect by the answer of Leach & Co. in the District Court, which admitted the allegation that Grant had been " duly appointed " receiver of all the Company's property. And plainly the validity of the appointment could not have been questioned by a collateral attack in another court. See Cadle v. Baker, 20 Wall. 650, 651; Shields v. Coleman, 157 U. S. 168, 178;

*Lively* v. *Picton* (C. C. A.) 218 Fed. 401, 406; *Lydick* v. *Neville* (C. C. A.) 287 Fed. 479, 482; *Olmstead* v. *Distilling Co.,* (C. C.) 73 Fed. 44, 48; *Shinney* v. *North American Co.* (C. C.) 97 Fed. 9, 10; *Barbour* v. *National Bank,* 45 Oh. St. 133, 140; *McNary* v. *Bush,* 35 Ore. 114, 117.

Section 11897 further provides that " under the control of the court, the receiver may bring and defend actions in his own name, as receiver, . . . and generally do such acts respecting the property as the court authorizes." Under this provision the Common Pleas Court had jurisdiction to determine what actions the receiver might bring. The action against Leach & Co.,—involving in effect the claim of an illegal taking by it of a large amount of the Company's bonds, which if recovered would reduce the amount of the mortgage lien—came, we think, fairly within the terms of the statute as an act respecting property in the custody of the court in the trustee's suit. But even if this were not the case, the order specifically authorizing and directing the receiver to bring the action in the District Court was one which the Common Pleas Court had jurisdiction to make in the exercise of its discretion and under the construction which it placed upon the statute; and, as such, was not one which, even if erroneous, was subject to the collateral attack which Leach & Co. sought to interpose in the District Court. Thus, in *Sanger* v. *Upton, Assignee,* 91 U. S. 56, 58, the District Court, on the application of the assignee of a bankrupt corporation, had made an *ex parte* order that the balance unpaid on the stock of the several stockholders should be paid to the assignee by a certain day, and in default of such payment the assignee should proceed to collect the amount due from each delinquent stockholder. This Court, in a suit instituted by the assignee in the Circuit Court against a stockholder who had failed to pay pursuant to that order, said: " The order was conclusive as to

the right of the assignee to bring the suit. Jurisdiction was given to the District Court by the Bankrupt Act . . . to make it. It was not necessary that the stockholders should be before the court when it was made, any more than that they should have been there when the decree of bankruptcy was pronounced. That decree gave the jurisdiction and authority to make the order. The plaintiff in error could not, in this action, question the validity of the decree; and, for the same reasons, she could not draw into question the validity of the order. She could not be heard to question either, except by a separate and direct proceeding had for that purpose."

3. It is urged, however, in argument that, even if the order of the Common Pleas Court be otherwise valid, Grant is merely a chancery receiver having no title to the property, and therefore cannot maintain an action for its recovery by reason of the settled doctrine in federal jurisprudence that such a receiver has no authority to sue in the courts of a foreign jurisdiction to recover demands or property therein situated, and that his functions and authority are confined to the jurisdiction in which he was appointed. See *Sterrett* v. *Second National Bank,* 248 U. S. 73, 76; and cases cited. The underlying reason for this rule, as shown in *Booth* v. *Clark,* 17 How. 322, 338, and emphasized in *Hale* v. *Allison,* 188 U. S. 56, 68, is that such a receiver " has no extra-territorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction." It has been applied by this Court in cases where a chancery receiver appointed by a state court sought to maintain a suit in a Federal court in another State; its effect there being as appears from a statement in *Hale* v. *Allin-*

*son, supra,* at p. 68, merely to deny permission to such an action by a receiver, " outside the jurisdiction of the State of his appointment."

Here, however, the Ohio court authorized and directed the Receiver to bring the action in a Federal District Court within Ohio, and having jurisdiction in territory within which the Common Pleas Court itself was located.[5] The Receiver's petition merely prayed for a recovery against Leach & Co., and did not seek an administration of the property by the District Court. Upon such recovery no assets would have to be removed from the territorial jurisdiction of the District Court to Ohio, the State of the receiver's appointment, as they would be recovered and held therein. The order did not authorize or require the receiver to take any extra-territorial action outside of Ohio, either for the purpose of bringing the suit or taking possession of the property recovered; and the bringing of the action within Ohio involved no application to the District Court to be granted the privilege of bringing a suit outside of Ohio upon the principle of comity. We think that under these circumstances the Federal court in the same State cannot rightly be considered a court of foreign jurisdiction within the meaning of the general rule, and that there is no substantial ground for extending that rule, as hitherto applied, so as to bring this case within its terms.

This conclusion is emphasized by the fact that in *Shields* v. *Coleman, supra,* p. 174, a receiver appointed by a chancery court of a Tennessee county, was allowed, without question, pursuant to its order, to maintain an action in the United States Circuit Court for the Eastern District of Tennessee,—within whose territorial limits that county was included—for the restoration of property then in the custody of a receiver appointed by the Fed-

---

[5] See note 1, *supra.*

eral court. Similar action was taken by this Court in *Harkin* v. *Brundage*, 276 U. S. 36, 42, in a proceeding by receivers appointed by the Superior Court of Cook County, Illinois, brought in the Federal District Court for the Northern District of Illinois. And, conversely, it was held in *Shull* v. *Fidelity & Guaranty Co.*, 81 W. Va. 184, 188, that a receiver appointed by a Federal District Court in West Virginia, might maintain an action in a Circuit Court of the same State, under authority from the Federal court, not being under such circumstances "a foreign receiver" nor proceeding outside of the jurisdiction of his appointment.

4. As the view of the Circuit Court of Appeals that the Receiver was without authority to bring the action against Leach & Co. was erroneous, its judgment must be reversed. And since it did not determine the merits of the Receiver's claim, the case will. be remanded to that court with instructions to proceed to that end in conformity with this opinion. See *Buzynski* v. *Luckenbach S. S. Co.*, 277 U. S. 226, 228, and cases cited.

*Reversed and remanded.*