## In re HAWKINS MORTG. CO.

### BOURNE v. WALLACE.

### No. 4374.

Circuit Court of Appeals, Seventh Circuit.
Jan. 7, 1931.

Harry T. Ice, of Indianapolis, Ind., James R. Fleming, of Portland, Ind., and Austin V. Clifford, of Indianapolis, Ind., for appellant.

Joseph J. Daniels, Albert Baker, and Warrack Wallace, all of Indianapolis, Ind., for appellee.

Before ALSCHULER, SPARKS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

This appeal is from an order disallowing the claim filed by the receiver of the Indiana Rural Credits Association, called association, against the estate in bankruptcy of Hawkins Mortgage Company, called Hawkins. The items of the claim are:

| | |
|---|---:|
| Promissory note of bankrupt to Indiana Rural Credits Association | $ 911,300.00 |
| Promissory notes secured by mortgage upon real estate in the amount of | 1,579,542.60 |
| Bills receivable in the amount of | 6,314.44 |
| Accounts receivable in the amount of | 15,004.50 |
| Cash in the amount of | 9,066.09 |
| Bonds in the amount of | 400.00 |
| Office furniture and fixtures | 1,441.60 |
| Total | $2,523,069.23 |

The following matters occurred in the order stated:

Hawkins gave the association its note for $911,300 for all the capital stock of the association held in its treasury, and later bought for cash, or traded for, all of the association's outstanding stock from the holders thereof, excepting six shares only.

The treasury stock purchase was canceled by returning that stock to the association's treasury and surrendering the note to Hawkins.

Obedient to a resolution of the stockholders of the association, authorizing a distribution of its assets to its stockholders and a discontinuance of its business, the directors discontinued the business and turned over to Hawkins all of the property shown in the last six items of the above claim.

A receiver for the association was appointed in the Jay county, Ind., circuit court, called Indiana court, because there was a controversy about taxes.

In February, 1924, the receiver filed his final report, showing all claims paid, and that he had in his hands assets that should be turned over to the association. No court order on that report is shown, but receipts are on file from the association for the assets held by the receiver.

In December, 1924, before adjudication that Hawkins was a bankrupt, the receiver filed his claim in bankruptcy for the last six items of the above claim.

In 1927, a controversy arose between the

receiver and the trustee of Hawkin and other parties concerning the title to the property shown in the claim then on file. The receiver, acting on the order of the Indiana court, confirmed in the various parties, by instruments in writing, the title to the property. The instrument given the trustee recites that it was made under authority of the Indiana court for a consideration of $750, paid by the trustee, and further says:

"Said receiver * * * of the Indiana Rural Credit Association does hereby confirm all transfers of notes and mortgages by said association or its officers to said Hawkins Mortgage Company and does hereby transfer, release and quit claim unto said Warrack Wallace, Trustee in bankruptcy of Hawkins Mortgage Company, all notes and mortgages originally executed to said Indiana Rural Credit Association and all other assets and property formerly belonging to said association. * * * "

After excepting from the above confirmation the property on the same day confirmed in others, who had taken it from the Hawkins mortgagees, the instrument continues:

"Being the intention hereby to vest in said * * * Trustee * * * all rights, claims or demands in favor of said Indiana Rural Credit Association or its receiver so that the same may hereafter be administered as assets of the bankrupt estate in the possession or charge of said trustee in bankruptcy and under the authority of the District Court of the United States; * * * excepting, however, that the said receiver reserves his right to prosecute his claim * * * filed * * * in said District Court."

In May, 1929, the receiver amended his claim by adding the first item thereof as it appears above.

In appointing the receiver, the Indiana court found that all of the stock of the association, except sufficient stock to qualify its directors, was held and owned by one person. That must have meant Hawkins. At the time of the delivery of the association's property to its one stockholder, its only debt was for the taxes paid by the receiver.

The receiver makes the contentions: (a) That the cancellation of the purchase of the treasury stock was invalid because it was a purchase by the association of its own stock, not authorized by any Indiana statute; (b) that the distribution of the association assets to the stockholders was not valid because the statute of Indiana requires, for such a purpose, the assent of the holders of all of the stock; and (c) that the Indiana court has the right to administer and distribute the property so taken from the association.

■ For the outstanding stock of the association, for which Hawkins did not pay cash, it traded its own capital stock and in doing so made representations as to values that were materially false. That fact has been brought, in argument, much into the foreground. Whether the character of those misrepresentations, made when the stock was traded for eight years ago, was such as would have justified a rescission of the contracts between those stockholders and Hawkins, does not appear. But whatever rights arose from those false representations accrued and were available to the old stockholders only. So far as the record shows, they have taken no action, except that most of them have filed claims of some sort in the bankruptcy proceeding. The question as to what are the rights of the former stockholders because of those fraudulent representations is in no way before us. Upon the record, Hawkins was, and the trustee is, the holder and owner of all of the shares of the association, excepting the six qualifying shares, supposed to have been held by the directors of the association. Who is the owner of those six shares, or whether they are held for a valuable consideration, does not appear. No one appears to be making any claim in connection with them.

■ With the association's property in the hands of the ultimate owner, the trustee stockholder, and there being no creditors of the association or any other claim, it does not matter whether or not eight years ago all of the stockholders voted in favor of the resolution to distribute the property to the stockholders.

Whether the cancellation of the purchase of the stock in the treasury was ultra vires is likewise immaterial. No one, other than the present stockholder, was either benefited or injured thereby, and he is not complaining.

The association property, except about $40,000, had been turned over to its only stockholder before the aid of the Indiana court, in which the receiver was appointed, was invoked. We are of opinion that, as there were no creditors and no other interest before the court, the Indiana court had and has no jurisdiction over or power to disturb the property in the hands of the stockholder. After the settlement by the receiver, under authority of the court, of the one claim against the association, for the settlement of which claim the receiver was desired, there remained a surplus in the hands of the re-

ceiver that was evidently, by permission of the court, turned back to the association. The association was never insolvent. Our attention is not called to any case supporting the proposition that a court of equity may reach out, on its own motion, and take from a stockholder property formerly belonging to a solvent corporation after the concern has discontinued business and has no creditors. Although it is well established that when a chancery court acquires jurisdiction for any purpose it will, as a general rule, proceed to determine the whole cause (Bispham Equity, § 37; Spidell v. Johnson, 128 Ind. 235, 239, 25 N. E. 889), so far as the Indiana court is concerned, the whole cause before it was determined when the only claim against the solvent association was paid by the receiver and the surplus turned back to the association. There was no question pending before the court. There were no equities to be settled, no creditors to be satisfied, and no property to be administered, unless it was taken away from the stockholder. The jurisdiction of a court of equity extends no farther than is necessary to do some equitable thing; it has no jurisdiction to do useless, unjust, and inequitable things. In the case of Grant v. Leach, 280 U. S. 351, 50 S. Ct. 107, 74 L. Ed. 470, relied on by appellant, the facts are so different from the facts here that it is not an authority in point. There Leach & Co. had paid in part for secured bonds with unsecured preferred stock of the company issuing the bonds, that became or was insolvent and had a very large amount of debts, both secured and unsecured.

In the settlement between the receiver and the trustee, above herein referred to, the receiver retained, by direction of the Indiana court, only the right to prosecute the claim then on file, which did not include the first item of the claim as above set out. That item was added by an amendment in 1929, long after the time for filing claims had expired, and presented a new and distinct cause of action. If it be conceded for the purpose of argument that there is jurisdiction in the Indiana court, and that it might have had at some time the right to recover the property in question or the value of it from the trustee, that right and the right to administer the property by the Indiana court, if there was any, was wholly disposed of by the receiver to the trustee under the direction of the Indiana court for a valuable consideration, in which it was expressly provided that the property should be administered in the bankruptcy court. To administer property in bankruptcy means to bring it together in the

hands of the trustee, settle all the contentions that may be raised concerning it, convert it into cash, and distribute it to those in favor of whom claims have been allowed by the bankruptcy court.

We are of opinion that, in any view of the case, the claim of the receiver was properly disallowed.

Affirmed.