**BANK OF COMMERCE & TRUST CO. et al.**
**v. HOOD et al.**
**No. 6821.**

Circuit Court of Appeals, Fifth Circuit.
May 25, 1933.

Rehearing Denied June 23, 1933.

Lowell W. Taylor, of Memphis, Tenn., and J. W. House, of Little Rock, Ark., for appellants.

Edwin T. Merrick, of New Orleans, La., and John C. Theus, of Monroe, La., for appellees.

Before BRYAN, SIBLEY, and HUTCH-ESON, Circuit Judges.

SIBLEY, Circuit Judge.

The Bank of Commerce & Trust Company, a corporation of Tennessee, together with T. W. Vinton, as trustees for bondholders in a bond mortgage given by Willetts Wood Products Company on its timber lands, sawmills, buildings, and machinery in Louisiana, filed a bill to foreclose for a principal sum of $874,000 in the District Court for the Western district of Louisiana. A receiver for the mortgaged premises only was prayed, but a temporary appointment was made covering all the mortgagor's assets. Five weeks later, on the petition of the trustees exhibiting a formal consent by the mortgagor, the receivership for all assets was made permanent, although insolvency was neither alleged nor admitted. Thereafter certain unsecured creditors in behalf of themselves and others intervened, praying a receiver for the unmortgaged assets, whereupon the same receiver was appointed. Under orders of the court the receiver issued certificates to raise money for taxes, manufactured into lumber logs already felled, sold lumber on hand, had the books audited, disposed of live stock and other movables, and finally within a year of his appointment sold the mortgaged property, which was bid off at a price of $600,000 by a bondholders' committee, which paid $10,000 cash and was to pay the balance with bonds in its control plus such further cash as the court might order paid to settle the bonds not in their control and such expenses of receivership as might be held assessable against them. Thereafter the Bank of Commerce & Trust Company was summarily ordered to pay over to the receiver a balance on general deposit of $19,466.56 due by it as a commercial bank to the mortgagor at the date of receivership; its contentions that the court had no jurisdiction over its person so to adjudge, and that there were valid offsets against the debt, being overruled. From this judgment the bank appeals. The bondholders' committee was adjudged liable to pay $71,280.42 in addition to the $10,000 already paid as their part of the cash necessary to discharge costs and expenses of the administration. The committee appeals from that judgment.

Although the receiver had sold the mortgaged property, the proceeds had not been distributed nor a final decree made when the bank balance was brought in question. The bank owned $24,000 of the bonds in its own right, and these bonds are involved in the claim of offset against the bank balance. The bank was still a party before the court, and had included its bonds in the total of $874,000 for which it sought foreclosure. In its character as trustee it could not claim foreclosure of these bonds if they were offset and paid by the amount it owed the mortgagor on general deposit. The existence and application of the general deposit was germane to the foreclosure of these bonds, and the court might properly require an account of it as a condition of foreclosure. Although the bank was not to be found in Louisiana except by its appearance as trustee in this litigation, the court had jurisdiction over it to grant full relief in this matter. But it should not have required the turning into the hands of its receiver of $19,466.56 of money without reference to the offsets claimed by the bank against the mortgagor. The general deposit was but a debt, and the receiver, standing in the shoes

of Willetts Wood Products Company, was entitled only to an account and a payment of the balance, if any. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Wheaton v. Daily Telegraph Co. (C. C. A.) 124 F. 61; Central Appalachian Co. v. Buchanan (C. C. A.) 90 F. 454; First National Bank v. Hopkins (C. C. A.) 199 F. 873.

The evidence showed that the deposit balance was part of a credit raised by the bank's discounting certain trade acceptances given to Willetts Wood Products Company by its customers and indorsed by J. F. McIntyre & Sons, Inc., and was held under a written agreement that acceptances not paid might be charged against it. Acceptances amounting to $8,097.44 were never paid, so that under the agreement the balance ought to have been reduced to $11,369.12, the unpaid acceptances being returned to Willetts Wood Products Company. The $24,000 of bonds held by the bank were taken up by it at the same time on the request of Willetts Wood Products Company, and it is testified that the deposit balance was also to stand as security for the bonds. These mutual debts were well within the range of equitable set-off as defined in the cases just cited. After receivership, however, the bank drew its cashier's check in favor of one Fisher, whom we understand to be a bank official, for the entire balance of $19,466.56, thus apparently closing the deposit account; and another of the bank's officers wrote the auditor of the receiver that this balance would be put against the indebtedness to the bank of J. F. McIntyre & Sons, Inc., since the original credit had really been given to them, and that the bank's bonds were included in the foreclosure as unpaid. The court might well find that the deposit balance of Willetts Wood Products Company could not after receivership be thus handed over to Fisher, nor be transferred to the credit of J. F. McIntyre & Sons, Inc., but that would not annul the duty to allow a just setoff. Although these bonds were included in the foreclosure, they were not among those deposited by the bondholders' committee in payment for the mortgaged property, and so far as appears the bank has no part in that purchase and has received nothing on its bonds. We think it should be allowed to credit the remaining $11,369.12 of the deposit account upon the bonds as part of its security therefor, filing the remaining bonds for participation in the proceeds of sale of the mortgaged property.

As to the costs and expenses of administration, contest of the amounts allowed has not been pressed on this appeal, but only of the distribution of the burden as between the mortgage fund and the general estate, each fund being far less than the claims against it. The regularity of appointing a receiver for general assets upon a mortgage foreclosure is questioned, citing Scott v. Farmers' Loan & Trust Co. (C. C. A.) 69 F. 17; and also the regularity of such appointment at the instance of simple contract creditors without lien, although consented to by the debtor, who was not alleged to be and did not confess itself insolvent, citing Lion Bonding Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871, and Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457. On the other hand, the authorization in Louisiana of protective receiverships by consent under section 8 of Act No. 159 of the General Assembly of 1898 is pointed to, and is said to be available in the federal courts, citing Pierce Petroleum Corporation v. Empire Gas & Fuel Co. (C. C. A.) 17 F.(2d) 758. But see Pusey & Jones v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763. Whether or not the general receivership would have stood if direct attack upon it had been timely made, since the court had a general jurisdiction to grant receiverships, and since hopeless insolvency in fact developed, this indirect attack after the receivership has been suffered to run its course cannot succeed. Grant, Receiver, v. A. B. Leach & Co., 280 U. S. 351, 50 S. Ct. 107, 74 L. Ed. 470; Harkin v. Brundage, 276 U. S. at page 54, 48 S. Ct. 268, 72 L. Ed. 457. But the fund raised from the mortgaged property which was the proper subject of the foreclosure receivership has liabilities wholly distinct from those attaching to the fund arising from the general assets, as much so as if separate receivers had been appointed for each. For such service and expense as pertained specially to the mortgaged property and its preservation and sale, that fund is primarily liable. Likewise such as pertained specially to the general assets must be charged against them alone. The receiver ought to distinguish clearly between the two in itemized accounts. Such items as benefited both funds but cannot be accurately distributed may be apportioned fairly between them. That the general fund may be exhausted by the charges against it is no reason for charging anything additional against the mortgage fund. These principles are established in Gugel v. New Orleans Bank (C. C. A.) 239 F. 676; In re Williams' Estate (C. C. A.) 156 F. 934; Seaboard National Bank v. Rogers Milk Products Co. (C. C. A.) 21 F.(2d) 414. They were to some extent applied in

the decree before us. We suppose that all the items which were specially charged against the general fund were properly so charged, as no one objects. Of the items charged specially against the mortgage fund the item of $8,703.75 for receiver's pay rolls and liability insurance is attacked. We can think of no reason why the receiver for the mortgaged property should carry liability insurance, although in manufacturing and handling lumber for the general estate he might need such. Nor is it apparent why so large a sum should have been necessary to pay for watching the mortgaged property during the ten months the receiver had it. An additional item for pay rolls of $3,038.81 is charged against both funds, and the bondholders have been required to pay 84.7 per cent. of it. They are entitled to a clearer showing of their liability than the present record makes before being so charged. Other items charged to both funds, but apportioned 84.7 per cent. against the mortgage fund, are $1,250 for auditor and $9,810.81 for audit and receiver's personal and office expenses. We do not see that the audit was at all necessary or helpful to the mortgage foreclosure, for there was no uncertainty or complication or issue of any sort about that. The audit was ordered by the court as being "for the interest of the creditors and stockholders of the Willetts Wood Products Company," the general creditors evidently being meant. The fees of the receiver and his counsel, amounting to $25,000, are like the receiver's office and personal expenses apportioned 84.7 per cent. against the mortgage fund. This percentage appears to be based on the ratio between that fund and the general fund. Such a basis of apportionment is too arbitrary. The record indicates little or no need of legal services or bookkeeping or detailed attention by the receiver in order to preserve the mortgaged property, but that for weeks at a time the receiver's counsel was engaged in investigation and litigation about other matters and in efforts to settle or collect general debts; and the receiver's disbursements indicate that he was very actively engaged for months in disposing of lumber and other personalty and in

making collections. We do not think the apportionment made of the last-mentioned items can be sustained as equitable. A more accurate inquiry ought to be made as to what time and services counsel and receiver gave to each fund, and what part of their expenses were in fact necessary for each. We set aside the allocation and apportionment of the expenses of the administration as made by the decree and direct a fuller and more accurate inquiry to be made thereabout, with a reconsideration also of amounts allowed if that shall to the court seem proper.

The bondholders further object to the charging against them of the fire insurance, $13,203.45, and the taxes, $14,675.39, paid by the receiver on the mortgaged property, asserting that the provisions of the mortgage promised exoneration therefrom. The covenants of the mortgage that the mortgagor will discharge all taxes and judgment liens, and will keep the property insured, of course render the general estate ultimately liable for such expenditures before sale, but the liability is of no higher dignity than other contract claims against it. The mortgage does specially provide that, if the trustee advances any insurance premiums, they shall be additional indebtedness secured by the mortgage, and shall be given preference in repayment over bonds and coupons, but, since the trustee did no such thing, that covenant is inoperative. If it be applied to advances by the receiver as being in behalf of the trustee, it would still operate only to charge the mortgaged property. The taxes on the real estate are a direct lien and a charge against it alone. Louisiana Oil Refining Co. v. Louisiana Tax Commission, 167 La. 605, 120 So. 23. The insurance also was for its sole benefit and safety. As between the receiver and the bondholders the receiver is entitled to reimbursement from the mortgage fund. The bondholders have by covenant a claim to reimbursement against the general fund, but ranking only with the claims of other creditors thereon.

The decree of the court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.