## McCANDLESS v. FURLAUD et al.
### No. 199.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1934.

Ehrich, Royall, Wheeler & Walter, of New York City (Ralph Royall, Bartow H. Hall, and James G. Holland, all of New York City, and William A. Magee, and Clark Miller, both of Pittsburgh, Pa., of counsel), for complainant.

Eppstein & Hirshfield, of New York City (Louis B. Eppstein, Ira W. Hirshfield, and Louis J. Altkrug, all of New York City, of counsel), for appellants Maxime H. Furlaud and Kingston Corporation.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

These are cross-appeals. Furlaud and Kingston Corporation appeal from a judgment of $1,834,640.08 against them for damages for breach of trust. The receiver appeals from a refusal to decree $850,000 more; also from the dismissal of the suit against the Byron Corporation and Chaucer Corporation.

The plaintiff was appointed receiver of the Duquesne Gas Corporation in the Western District of Pennsylvania, having been appointed such on a stockholder's bill and a consent thereto by the Duquesne Gas Corporation. The bill of complaint, in this suit, alleges the appointment in the Western District of Pennsylvania, on January 19, 1932, stating that the receiver was appointed "of all the assets and property, including choses in action, of said Duquesne Gas Corporation, and the complainant has duly qualified and is now acting as such Receiver; that upon petition of the complainant as such Receiver duly filed in the United States District Court, in and for the Southern District of New York, an order was duly made on the 23rd of March, 1932 by said last mentioned. Court appointing said complainant George W. McCandless, as Ancillary Receiver of Duquesne Gas Corporation which last mentioned order duly authorized the complainant, as such Receiver, to bring this suit, and the complainant has duly

qualified and is now acting as such Ancillary Receiver."

The answer of the defendants denied this allegation and required proof thereof. The order appointing the plaintiff ancillary receiver after reciting the appointment in the Western District of Pennsylvania reads:

"Ordered, adjudged and decreed that George W. McCandless be and he is hereby appointed ancillary receiver of Duquesne Gas Corporation in and for the Southern District of New York to carry into force and effect the order of the court of original jurisdiction, and it is further

"Ordered, adjudged and decreed that said ancillary receiver is hereby authorized to bring an action against the promoters of said corporation * * * for an accounting and for the restitution of funds * * *."

The substance of this bill is that the banking house of Furlaud & Co., Inc., of which the defendant Furlaud was president, received the proceeds of a public sale of securities of the Duquesne Gas Corporation in a fiduciary capacity, for that corporation, and became accountable as a trustee but, instead of accounting for the fund, diverted and misappropriated about one-half of the moneys received; that they caused the corporation Furlaud & Co., Inc., to be dissolved; that the defendants Kingston Corporation, Byron Corporation, and Chaucer Corporation were dummy corporations, used in attempting to cover up diversions and misappropriations.

This claim arises out of the following facts: Furlaud & Co., Inc., of New York City with offices there, early in 1930, with the defendant Furlaud, carried on a banking business. He and one Reuter, not served with process, were the chief stockholders and with other employees, directors, and officers, early in 1930, negotiated with the owners of nine gas properties located in the Pittsburgh, Pa., region and obtained options, without consideration, for their purchase by the Kingston Corporation. They employed an engineering firm, and about February 1, 1930, it made written reports appraising five of the properties at $1,700,000. These were purchased at about $1,300,000. The other four properties were appraised by other engineers at $5,000,000 in February, 1930, and the purchase price was about $1,200,000. Thereupon the Duquesne Gas Corporation was organized in Pennsylvania with 1,000 shares of no par value. In February, 1930, it was arranged with the various optionors for the execution of the assignments of the various gas properties by placing instruments of conveyance in escrow with banks located in Pittsburgh and Washington, Pa., and other convenient places. The instruments of conveyance, as deposited, ran to the gas corporation as transferee. The deposit agreement provided that the escrow banks, when notified by Furlaud, were to present drafts upon the Duquesne Gas Corporation for the respective balances of the purchase price, payable in New York, and that the banks, upon having telegraphic advices from their correspondent banks in New York that the drafts had been accepted, were to deliver the conveyances to named persons being the employees of the firm of attorneys who were in charge of carrying out the corporate proceedings. The aggregate balance of the purchase price of the nine properties payable under the escrow agreements was $2,449,900.

There was organized a bankers' syndicate and a distributing group for the issuance and sale of $4,000,000 of Duquesne Gas Corporation first mortgage 6 per cent. convertible gold bonds. Furlaud & Co., Inc., were the syndicate managers and, with four other banking houses, publicly announced the issue for sale on March 25, 1930, and about forty dealers in securities became the distributing group and sold the bonds. They were offered at 97½ and the distributing group were given 4 per cent. commission. Necessary proceedings were taken for the authorization of the bond issue, with a corporate mortgage to secure it, and for an issue of $1,000,000 of notes and for an increase of the capital stock from 1,000 shares to 1,250,000 shares without par value. The security for the bond issue was a mortgage covering the properties. It was out of these funds that payments for the oil properties were made. In our disposition of the case, it is sufficient to say that the net proceeds from the sale of the $4,000,000 bond issue is shown to have been $3,631,671.04; from the sale of the total note issue, $861,097.69; from the sale of 85,000 shares of stock, $850,000—a total of $5,342,768.23. The cost of the properties, including the working capital put in by the bankers, amounted to $2,937,989. It is shown that the amount received by the bankers from the bonds, notes, and stocks now claimed to have been diverted and misappropriated to their own use, is $2,404,779.73. Whether this was a misappropriation of the funds or a legitimate profit we need not now decide.

■ The legal sufficiency of the appointment of the plaintiff as an ancillary receiver in the Southern District of New York was put in issue by the answer and he bears the burden of establishing its legality. Grant v. Leach &

Co., 280 U. S. 351, 50 S. Ct. 107, 74 L. Ed. 470. The record of the ancillary proceedings in evidence consisted of: (a) A petition of the receiver, captioned "Frank T. Harrington, Complainant, against Duquesne Gas Corporation, Defendant," in the United States District Court for the Southern District of New York and annexed to the petition; (b) the amended bill of complaint filed in the Western District of Pennsylvania, captioned "Frank T. Harrington, Complainant, against Duquesne Gas Corp., Defendant"; (c) amendment to the prayer for relief in the action in the Western District of Pennsylvania; (d) answer of the defendant in the action referred to in (b); (e) a certified copy of the resolution of the board of directors of the Duquesne Gas Corporation, annexed to the answer filed in the Western District of Pennsylvania; (f) the answer of the defendant Duquesne Gas Corporation filed in an action brought in the Western District of Pennsylvania, by the trustee under the first mortgage of the Duquesne Gas Corporation; (g) the decree entered in the Western District of Pennsylvania; (h) a certificate of the clerk of the District Court for the Western District of Pennsylvania, certifying that a receiver's bond of $50,000 had been filed. On these papers the District Court for the Southern District of New York appointed the plaintiff ancillary receiver of the Duquesne Gas Corporation in this district, and authorized this suit to be brought against the promoters of the corporation for an accounting and for the restitution of funds, fraudulently diverted and misappropriated, and for secret and excessive profits. Thus, upon the petition alone of a foreign federal receiver, an ancillary receiver is appointed, where no bill had been filed in the jurisdiction by any party aggrieved praying for such relief. No process was issued in this jurisdiction and there has been no appearance or answer filed by the corporation within the district. This suit was instituted shortly after such appointment.

■■■ It has long been settled that an equity receiver is an officer of the court appointing him and, as such, he has no status and cannot be sued in a district other than the one in which he was appointed and he cannot recover property or assets of the corporation in receivership even though he may have been authorized to do so by the court of his original appointment. Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Sterett v. Second Natl. Bank, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135; Great Western Mining & Mfg. Co. v. Harris,

198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163; Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380. Nor may foreign receivers sue outside the district as a matter of comity even by obtaining permission before suit is commenced. Moore v. Mitchell, 281 U. S. 18; 24, 50 S. Ct. 175, 74 L. Ed. 673; Fowler v. Osgood, 141 F. 20, 4 L. R. A. (N. S.) 824 (C. C. A. 8). Moreover, the usual practice is to obtain an ancillary receiver by an independent bill requesting it. Indeed, it has been said that such an independent bill is required. Mercantile Trust Co. v. Kanawha Ry. Co. (C. C.) 39 F. 337. Even if there are assets in the foreign jurisdiction, the court there has a right to appoint a receiver only in a pending suit where independent relief is asked. To permit a foreign receiver to obtain an ancillary appointment, on an ex parte application, improperly avoids the rule denying foreign receivers the right to sue in the foreign jurisdiction. The appointment of such receiver does not give him authority to acquire possession of property beyond the jurisdiction of his appointment. The right of a receiver to sue in a foreign court cannot be upheld as a mere incident to the office of a receiver. The appointing court cannot clothe him with such power and any attempt to confer any such authority on him is futile. Hilliker v. Hale (C. C. A.) 117 F. 220; Greene v. Star Cash & Package Co. (C. C.) 99 F. 656; In re Brant (C. C.) 96 F. 257; Mercantile Trust Co. v. Kanawha Ry. (C. C.) 39 F. 337. The authority to sue is sufficiently raised by the denial of the allegation that the receiver was duly appointed. Grant v. Leach & Co., 280 U. S. 351, 50 S. Ct. 107, 74 L. Ed. 470; Fairview, etc., Co. v. Ulrich, 192 F. 894 (C. C. A. 7).

■■■ While ancillary receiverships are usually conducted in the spirit of comity, with a view of avoiding unnecessary conflict in the administration of the trust, they are, however, in all respects the proceedings in two respective causes, each resting upon its own distinct basis. Ancillary proceedings are independent suits and there must be a plaintiff and a defendant and the first must be one who claims injury committed by the defendant. One who is not aggrieved cannot come into court and ask for the appointment of an ancillary receiver. Lack of title to the property is more than a mere technicality. It involves the very substance of a right to file the independent bill. Street's Equity Practice, vol. 3, § 2542; Walker v. U. S. Light & Heating Co. (D. C.) 220 F. 393. The appoint-

ment of the plaintiff as ancillary receiver was void, and he did not acquire, in any of the proceedings, a status to warrant the institution of this suit.

Decree reversed.