**In the Matter of NEIGHBOR'S FOOD MARKET, INC.**

No. 84726.

United States District Court
N. D. Ohio, E. D.

May 9, 1960.

Warren G. Smith, Canton, Ohio, for alleged bankrupt.

Gene Barnhart, Black, McCuskey, Souers & Arbaugh, Canton, Ohio, for petitioning creditors.

KALBFLEISCH, District Judge.

The record of these proceedings has been certified to this court by referee Harold B. Doyle for review of his findings and order adjudging Neighbor's Food Market, Inc., hereinafter referred to as Petitioner, an involuntary bankrupt.

In his written opinion, dated November 25, 1959, the Referee found the facts to be as follows:

"Debtor (Neighbor's Food Market, Inc., had operated a food store in Canton, Stark County, Ohio for several years prior to June 18th, 1958 and on that date was in financial difficulties and had ceased to operate. The cessation of operation was permanent. At or about the time operations were terminated, discussion was had between the executive officer of the Corporation and several of its creditors, having substantial claims against it. Arrangements were made by the corporate officer and the creditor's group, above indicated, for holding a public sale and an auctioneer was engaged for that purpose. The public sale was held and approximately $4,200.-00 was realized therefrom, which amount was held by the auctioneer, presumably for distribution to creditors. The manner of such distribution was apparently not arranged.

"Subsequently Shaeffer-Black, Inc., secured a judgment against the Debtor Corporation and on January 7th, 1959 issued an execution directed to the Sheriff of Stark County, Ohio. On that same day (January 7th, 1959) upon which the writ of execution was issued, the Sheriff noted on the return portion of the writ, that it was returned unsatisfied, that notation was made while the writ was in the office of the Sheriff. On January 7th, 1959 late in the afternoon, the attorney for the above named judgment creditor commenced a proceeding in aid of execution and secured an Order of Court from one of the Judges of the Court of Common Pleas of Stark County, Ohio for a hearing in said proceeding in aid of execution.

"Subsequently a hearing in said proceeding in aid of execution was held and an order granted by the Court directing the Auctioneer holding the funds derived from the proceeds of the sale of all the assets of said Corporation, the sum of $2,722.-30 to be applied towards the payment of the judgment previously secured by Shaeffer-Black, Inc. Payment was made under that order on January 29th, 1959.

"A petition in bankruptcy was filed by the petitioning creditors

herein in the District Court of U. S. for the Northern District of Ohio, Eastern Division on the 15th day of May, 1959, * * * "

As conclusions of law, the Referee found that:

1. Sufficient proof was submitted to establish the corporate entity and domicile of the petitioner to confer jurisdiction on this Court.

2. The evidence was not sufficient to establish any form of assignment by the petitioner to the creditors. "The most that can be said * * * is that as a result of conferences between corporate officer and certain creditors arrangements were made for a public sale, which was held and the proceeds retained by the auctioneer, pending arrangements for distribution of the funds."

3. "At the time of the hearing in the proceedings in aid of execution the auctioneer appeared and submitted herself to the jurisdiction of the Court of Common Pleas of Stark County, Ohio. No officer of the Corporation appeared at said hearing. The Court finds that the Corporation is estopped from denying that the funds derived from the public sale were the property of the debtor corporation."

4. "The manner of making the return and the proceedings (in the Common Pleas Court) which may subsequently follow are statutory and the applicable statute in this case is found in Revised Code under Section 2333.13 * * * "

5. "The procedure applying to the return of an execution and to the subsequent proceedings in connection therewith are controlled by the statute and must be strictly construed."

6. "The proceedings in aid of execution were commenced prior to the return of the execution, which was a prerequisite to the validity of those proceedings and therefore was premature."

7. "The claimed lien of Shaeffer-Black, Inc., under the proceeding in aid of execution commenced January 7, 1959, is void and not voidable."

8. "Consequently the payment of January 29th, 1959, made to the judgment creditor, (Shaeffer-Black, Inc.) while the Corporation was admittedly insolvent was a preferential transfer, as defined in the Bankruptcy Act of 1898 as amended and therefore is found to be an Act of Bankruptcy."

9. "The Court therefore finds that the Neighbor's Food Market, Inc., of Canton, Stark County, Ohio, should be and is hereby adjudicated a bankrupt * * * "

The petitioner claims that the referee's findings and conclusions are erroneous in several respects:

1. The petitioning creditors failed to prove that the petitioner had its principal place of business, residence or its domicile within the territorial jurisdiction of this Court at any time during the preceding six months and that, therefore, the Court is without jurisdiction of this matter under 11 U.S.C.A. § 11, sub. a(1).

2. The petitioner did not make or suffer to be made a preferential transfer under 11 U.S.C.A. § 96, sub. a(1) within four months prior to the filing of the creditors' petition because the petitioner no longer owned the property transferred.

3. Even if at the time of transfer the property was still owned by the petitioner, the transfer was made "pursuant to a valid lien created by the service of a garnishment order" issued by the Stark County Court of Common Pleas more than four months prior to the filing of the creditors' petition.

■ The Court is required to accept the referee's findings of fact unless they are clearly erroneous. General Order 47 following 11 U.S.C.A. § 53.

■ 1. 11 U.S.C.A. § 11, sub. a(1) empowers the United States Courts to: "Adjudge persons bankrupt who have had their principal place of business, resided or had their domicile within their respective territorial jurisdictions for the preceding six months * * * "

The petitioner contends that the petitioning creditors failed to prove that the Corporation had a principal place of busi-

ness in the Northern District of Ohio, it having ceased to do business and having had no place of business anywhere during the preceding six months. (Petitioner's Brief, page 2.)

The President of the petitioner, Louis Lodico, testified that the Corporation had operated for at least twelve years under his direction in the same locality, until it closed its doors in June 1958. (Tr. 7.) Thereafter, mail addressed to the petitioner was forwarded to Lodico's residence. (Tr. 9.) Lodico was the statutory agent upon whom summons was served on May 18, 1959, in connection with this proceeding (Tr. 10), and Lodico signed the answer filed herein on June 1, 1959, as President of Neighbor's Food Market, Inc. Lodico further testified that petitioner had at no time operated outside Stark County and that at the time of the hearing in Bankruptcy Court on June 16, 1959, the petitioner's assets were being held by Russell Kiko (Tr. 18) who appears to be a Stark County auctioneer.

> "There is no requirement in the (Bankruptcy) act that any certain amount of business must be transacted, but that the place where the business of the corporation remaining in its hands, however great, however insignificant, is transacted shall be within the district." In re American Bond & Mortgage Co., et al., 7 Cir., 1932, 61 F.2d 875, 878.

Sufficient uncontradicted evidence was introduced as to the petitioner's doing business, being domiciled, residing or having its principal place of business in this judicial district to sustain the referee's findings and conclusions as to the jurisdiction of this court.·

2. There is no dispute as to the fact that in June, 1958, after one of the petitioner's creditors had obtained a judgment against it, the business was closed down and, upon agreement among most, if not all, of the creditors, the assets of the petitioner were sold at public auction by Kiko who thereafter held the funds. (Tr. 38–40; 49–51.) Petitioner contends that Kiko held the funds for the benefit of its creditors (Petitioner's Brief, June 30, 1959, page 7). Petitioning creditors argue that the money held by Kiko was at all times the property of the petitioner, no evidence having been introduced to establish that it assigned the proceeds of the sale to Kiko or to the creditors. (Creditors' Reply Brief, Feb. 8, 1960, page 2.) The referee held that, because no officer of the petitioner appeared at the hearing on the proceedings in aid of execution against Kiko by Shaeffer-Black, the petitioner was estopped to deny that the funds derived from the auction were its property. (Referee's Opinion, page 3.)

At the hearing before the referee on June 16, 1959, Lodico was asked whether the only assets of the Neighbor's Food Market were "the funds which are presently held in the hands of one Russell Kiko," (Tr. 18) and whether that $4,200 fund represented "all the assets that you are aware of of Neighbor's Food Market." (Tr. 23.) Lodico gave affirmative answers to both questions, indicating that he considered the money held by Kiko to be the property of the petitioner corporation rather than of the creditors. Lodico testified that the proceeds from the sale of petitioner's assets, "by mutual understanding" of the various creditors, were to be "pooled together, banked in the bank, and then find out what the total debts were and divide that up in accordance, percentage wise" (Tr. 19), and "it was our understanding" that Kiko was "holding it for distribution." (Tr. 54.) While Lodico testified that Messrs. Wenner and Harry Strobel, employees of two of petitioner's creditors, were to be "trustees of that money," Strobel did not testify at the hearing and Wenner denied that he had anything to do with the distribution of the funds (Tr. 45). Wenner also denied that he ever had any discussions with Kiko, or that he ever attempted to instruct Kiko, as to the distribution of the funds. (Tr. 48.) Wenner further testified that his "understanding with Mr. Lodico" was that "the checks would have to be signed by him (Lodico), that "everything had to

be done through Mr. Lodico" (Tr. 45), that "we were never appointed to do anything" (Tr. 46), and that he (Wenner) never attempted to assume control of the fund. (Tr. 49.) While Wenner agreed, under cross examination, that Lodico had no control over the Kiko fund and that "no part was to be paid to Lodico" (Tr. 51), Wenner's competency to testify as to such matters was questionable, especially in view of his earlier testimony as to his lack of control over the fund.

Kiko did not testify at the hearing and no documentary evidence such as bank records, assignments, escrow or trust agreements were introduced to corroborate petitioner's position that it had assigned the proceeds of the sale of its assets to Kiko or its creditors.

Though the burden of proof is on the petitioning creditors to establish that the money held by Kiko was the property of petitioner, the burden of going forward, "the duty of producing evidence to satisfy the judge," shifted to petitioner once the petitioning creditors had traced the proceeds of the sale of the assets to Kiko who made no claim of ownership. (9 Wigmore on Evidence, 3d. Ed., page 285.) Any evidence of an assignment of the funds to Kiko for the benefit of creditors would be peculiarly within the knowledge of petitioner, Kiko and the creditors. Petitioner did not sustain the burden. Kiko did not appear for testimony, and the petitioning creditors deny that the assignment to Kiko was for the benefit of creditors "for it met none of the requirements of such an assignment." (Creditors' Brief, June 23, 1959, page 4.)

Thus, even without resorting to estoppel, the record supports the referee's conclusion that there was no assignment by petitioner to Kiko for the benefit of its creditors and that the fund held by Kiko remained the property of the petitioner.

3. The referee held that the claimed lien of Shaeffer-Black under the proceedings in aid of execution commenced January 7, 1959, was void and not voidable, because they were commenced prior to the return of the execution, that no lien attached to the property at that time and thus the payment by Kiko to Shaeffer-Black on January 29, 1959, pursuant to the order of the Court of Common Pleas, amounted to a preferential transfer of funds belonging or owing to the petitioner within four months prior to the filing of the creditors' petition.

The execution in question, issued January 7, 1959, was returned by the Sheriff on the same date, marked "wholly unsatisfied." This document bears a stamp indicating that it was filed by the Clerk of Courts of Stark County on January 8, 1959. (Petitioner's Ex. 1.) An affidavit of Shaeffer-Black's attorney, Mr. Steiner, filed in the office of the Clerk of Courts on January 7, 1959, at 3:50 p. m., set forth that " * * * an execution issued herein against the judgment debtors has been returned wholly unsatisfied, and that the judgment herein remains wholly unsatisfied, and that the defendants have property which they unjustly refuse to apply toward the satisfaction of said judgment." (Petitioner's Ex. 2.) Pursuant to Attorney Steiner's application, the Common Pleas Judge issued an order for Kiko to appear in court on January 19, 1959, for an examination as to his indebtedness to petitioner and as to any property or credits of petitioner held by him. The order further enjoined and restrained Kiko " * * * from transferring or in any way disposing of such property, money or credits, until further order in the premises." (Petitioner's Ex. 3.) This document was stamped by the Clerk as having been received on January 7, 1959, at 3:51 p. m.

At the examination of Kiko, held on January 19, 1959, he admitted holding the funds, whereupon the Court ordered him to pay Shaeffer-Black $2,722.30, the amount due on its judgment, plus court costs. Payment of this sum was made by Kiko on January 29, 1959. (Tr. 30–31.)

The referee bases his holding that the order of the Court of Common Pleas, dated January 7, 1959, was void, to the

extent of creating a lien upon the fund held by Kiko, on the fact that the order was issued prior to the date of the clerk's stamp on the execution. The petitioning creditors and the referee maintain that the word "return" as used in Section 2333.13 of the Ohio Revised Code (which provides that an order to appear and answer may be issued "after the return of an execution against the property of a judgment debtor") does not mean the endorsement on the execution by the Sheriff as the the time and manner in which he carried out its mandate, but rather "the return of the writ to the Court," as evidenced by the stamp of the clerk of the Court. (Petitioning Creditors' Brief, June 23, 1959, page 8.)

In support of their position that the State Court order is void, petitioning creditors rely principally on two cases. One is Watkins v. Breyfogle, 27 Ohio Law Abst. 74 (O.App. 2d Dist., Franklin Co., 1938), which held that under Section 11772 of the Ohio General Code (substantially the same as the present Section 2333.13) it was a "jurisdictional prerequisite" to invoking the provisions of that section that it must be charged and proved that an execution had been issued and returned. Page 79. But in that case, unlike the one now being reviewed, no execution had ever been issued (page 76) and the court found that "as no proof was forthcoming [or] could have been, that an execution had issued and had been returned * * * there could have been no order * * * properly made in the proceedings." Page 79.

In the present case an execution was issued and had been returned by the Sheriff unsatisfied prior to the issuance of the Court's order. This fact was in evidence before the Court and apparently was established to the Court's satisfaction by the affidavit of Attorney Steiner.

The second case relied on by petitioning creditors is Conkling v. Parker, 1859, 10 Ohio St. 28, 29. There the petitioner sought to amerce Parker, the Sheriff of Lake County, for failing to return to the court a writ of execution within the time prescribed . by statute. The evidence showed that the Sheriff had endorsed on the writ that he had been unable to find the property described and that this endorsement had been made within the statutory period of time. He had failed, however, to deliver the writ to the clerk until after the close of .the term of court, whereas the statute imposed on the Sheriff the duty to return the writ itself to the court "on or before the second day of the term to which said writ is made returnable." Page 31. The Conkling case does not support the petitioning creditors, however, as the Court held that the Sheriff had not breached his duty inasmuch as the writ "was accessible to the parties * * * for their inspection and for any action which the Court might be called upon to take in relation thereto," and that the statute "did not, in terms, require that it [the writ] should be returned to or filed by the Clerk, but simply that it should be returned to the Court." Page 33. The Court further stated that " * * * though the Clerk is the proper custodian of the papers and documents filed in the Court, yet we may well hesitate to hold that executed process, or other papers, cannot come to the possession of the court, when in session, without passing, in fact, through his hands." Page 33.

The Supreme Court, in the Conkling case, noted that the Sheriff's endorsement on the writ is called a "return." The present statute (Section 2333.13) uses only the word "return," and does not specify whether, as used therein, it means the Sheriff's endorsement or the delivery of the writ to the clerk.

No person was shown to have been prejudiced by the failure of the Sheriff (if, indeed, there was such a failure) to deliver the execution to the Court prior to the issuance of its order of January 7, 1959.

It therefore appears to this Court that Section 2333.13 has been substantially complied with, that the Common Pleas Court of Stark County was not without jurisdiction to enter its order of January 7, 1959, and that the referee was in error

in holding that the order was void. If any errors were committed in the state court proceedings, the remedy of the parties prejudiced thereby was a direct attack on the order by seeking to have it vacated, modified, or reversed. Grant v. A. B. Leach & Co., 280 U.S. 351, 359, 50 S.Ct. 107, 74 L.Ed. 470. Other interested persons might have intervened or brought proceedings in equity to block enforcement of the order (Restatement of the Law of Judgments, page 65), or the creditors might have filed their petition on or before May 7, 1959.

These proceedings will be remanded to the referee for reconsideration, in view of this opinion, of his order adjudicating petitioner a bankrupt.