THE TITANIC.

(District Court, S. D. New York. July 3, 1913.)

1. COURTS (§ 350*)—FEDERAL COURTS—DEPOSITIONS—POWERS OF COURTS OF ADMIRALTY—RULES—COMMISSION FOR ORAL EXAMINATION.

Rule 6 of the general rules of the District Court for the Southern District of New York, of 1913, providing for the issuance of commissions to take testimony, either closed or open, and that they shall be executed as nearly as may be in accordance with the law of the state of New York, is within the power of the court, under Rev. St. §§ 913, 918 (U. S. Comp. St. 1901, pp. 683, 685), and is applicable to practice in admiralty, under rule 46 of the admiralty rules of the Supreme Court, and authorizes a court of admiralty to issue a dedimus potestatem to examine witnesses in a foreign country on oral interrogatories.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 923; Dec. Dig. § 350.*]

2. ADMIRALTY (§ 76*)—DEPOSITIONS—COMMISSION FOR ORAL EXAMINATION OF WITNESSES—PROCEEDINGS FOR LIMITATION OF LIABILITY.

A commission granted to damage claimants in proceedings for limitation of liability to examine orally in a foreign country certain witnesses in the employ of petitioner, and denied as to certain other witnesses presumably disinterested.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 588–591; Dec. Dig. § 76.*]

In Admiralty. Petition by the Oceanic Steam Navigation Company, Limited, as owner of the steamship Titanic, for limitation of liability. On application of the Long Island Loan & Trust Company and other

damage claimants for commission to examine witnesses. Commission granted.

This is an application for a dedimus potestatem to examine certain persons in the kingdom of Great Britain upon oral interrogatories and cross-interrogatories. The proceeding has been brought to limit the liability of the owners of the steamship Titanic, sunk on the 15th of April, 1912, in mid-ocean. The moving party has excepted to the petition for limitation, and has likewise filed an answer setting up negligence on the part of the vessel herself, and personal negligence of her owners. The persons to be examined in this action are partly members of the crew of the steamer and partly others. Other claimants joined in the application, which is opposed on two grounds: First, the lack of power of this court to issue such a commission; and, second, the impropriety under the circumstances.

George Whitefield Betts, Jr., of New York City, Edward D. Benedict, of Brooklyn, N. Y., and Reese D. Alsop, of New York City, for applicant.

Charles C. Burlingham, J. Parker Kirlin, and Norman B. Beecher, all of New York City, for the Titanic.

A. Gordon Murray, of New York City for claimant Nasrallah.

HAND, District Judge. [1] The sixth rule of the general rules of the District Court, first promulgated January 6, 1912, and repromulgated February 1, 1913, provides as follows:

"Commissions, either closed or open, shall be moved for (if not consented to) upon affidavits specifying the facts expected to be proven, together with the names of the witnesses, the shortest time within which the parties believe the testimony may be taken and the commission returned.

"No commission to examine unnamed witnesses shall issue except by order of the court, entered on consent or cause shown, nor shall a commission operate as a stay of proceedings except by special order of the court."

Then follows a paragraph regarding the settlement of interrogatories, and the rule then proceeds as follows:

"Commissions shall be executed as nearly as may be in accordance with the law of the state of New York."

The rules of the District Court are divided into five parts, general rules, common-law rules, equity rules, admiralty rules, and bankruptcy rules. The general rules are such as apply to all branches of the court's work, and were intended by the court especially to cover all the subsequent four. Under the old admiralty rules of the District Court, promulgated November 6, 1838, provision for the issuance of commissions was made. Rules 105 to 118. These provided for nothing but written interrogatories. Rule 119 provided that:

"The provisions in perpetuam rei memoriam to be used in this court may be taken under dedimus potestatem, or by any officer authorized by act of Congress to take depositions de bene esse to be used in the United States in like cases and by like proceedings as are now authorized by the Supreme Court of the state of New York."

The provision of 1912 abolished these rules, and left nothing in the admiralty rules which at all affected the taking of commissions. It was the clear intent of the court, therefore, to assimilate the taking of commissions in admiralty to the taking of commissions in equity or at common law, and to have but one method for all commissions, wher-

ever taken. No one disputes that under the law of the state of New·
York a commission may be executed on oral interrogatories, so·that
the power of this court depends upon the validity of the rule in ques-
tion. Section 913 of the Revised Statutes (U. S. Comp. St 1901, p.
683) provides:

> "The forms of mesne process, and the forms and modes of proceedings in
> suits in· equity and maritime jurisdiction in the Circuit and District Courts
> shall be according to the principles, rules and usages which belong to courts
> of equity and of admiralty, respectively, except when it is otherwise pro-
> vided by statute or by rules of court made in pursuance thereof."

Section 918 (U. S. Comp. St. 1901, p. 685) provides:

> "The several Circuit and District Courts may, from time to time, and in
> a manner not inconsistent with any law of the United States,·or with any
> rule prescribed by the Supreme Court under the preceding section, make rules
> and orders directing or returning of writs and process, the filing of plead-
> ings, the taking of rules, the entering and making up of judgments by de-
> fault, and all other matters in vacation, and otherwise regulate their own
> practice as may be necessary or convenient to the advancement of justice
> and the prevention of delays in proceedings."

Rule 46 of the Supreme Court rules in admiralty provides that in all
cases not provided for by those rules· the district and Circuit Courts
are to regulate the practice of said courts respectively in such manner
as they deem most expedient to the due administration of justice in
suits in admiralty.

Under the power so given Judge McPherson decided in The West-
minster (D.·C.) 96 Fed. 766, that the District Court had power to reg-
ulate the method of executing a commission dedimus potestatem in
admiralty. Judge Blatchford, in Bischoffscheim v. Baltzer (C. C.) 10·
Fed. 1, decided that the Supreme Court equity rule No. 67 changed
the method of executing commissions to foreign countries, although
he seems to have been also of the opinion that depositions de bene esse·
could be also issued, which can hardly be said to be the law at present.
Judge Lanning, in Encyclopedia Britannica v. Werner Co. (C. C.) 138
Fed. 461, recognized the equity rule 67 as the authorization for open
commissions in equity, following the reasoning in Bischoffscheim v.
Baltzer, supra, and also the decision of Judge Green in Edison Electric
Co. v. Westinghouse, Church, Kerr & Co. (C. C.) 138 Fed. 460, thus·
basing the change upon a Supreme Court rule which is certainly as
subject to section 866 of the Revised Statutes as any other rule of
court. Judge Blatchford in The Louisiana, 1 Ben. 328–330, Fed. Cas.
No. 8,536, uses the following language of oral commissions in ad-
miralty:

> "It is a practice which is not new, and, being one calculated to promote·
> the dispensation of justice, it ought to be observed in a proper case. This
> court has full control over the mode of procedure to be observed in the mat-
> ter of taking testimony."

It is quite true that the decision in that case did not require the
learned judge to decide that an oral commission might issue out of
the admiralty, but the language is none the less· an expression of his·
opinion. ·

Now the petitioner's answer to all this is that section 866, authorizing the issuance of commissions dedimus potestatem according to common usage, fixes as matter of law the method of execution as of the date of the passage of the statute. For this the supposed warrant lies in some language of Judge Brown in United States v. Fifty Boxes and Packages of Lace (D. C.) 92 Fed. 601. Concededly the decision in that case was quite different from the case at bar. Judge Brown had before him an objection that the commission was not executed in accordance with the laws of the state of New York. He said that the Conformity Act (section 914 of the Revised Statutes [U. S. Comp. St. 1901, p. 684]) did not control proceedings in the admiralty, that "common usage" meant the usage at the time of the revision of 1874, and that the federal courts were not bound to accommodate their practice to the changing regulations of state procedure. In this respect I do not think that Judge Brown's language is to be taken as meaning that under the powers reserved by sections 913 and 918, together with the forty-sixth Supreme Court admiralty rule, this court has no power to change the method of executing commissions. It is a detail of practice which would normally be within the competence of rules of court.

The phrase "common usage," of the statute, in my opinion only means such usage as may from time to time become common. We should remember that these words occurred in the original Judiciary Act of September 24, 1789 (1 Stat. 73, c. 20). I cannot suppose that all the incidents of practice at that time were necessarily crystallized by that statute for a period of 85 years until the revision of 1874, and similarly that the exact practice of 1874 will be crystallized without power of change until a new revision. The phrase seems to me to admit of changing practice as the new needs of the time require, and I can see no better method of establishing a new common usage than by rules of court. If this be not so, the whole detail of such practice must be held perpetuated in the statute until Congress changes it. That would run counter to the whole policy of federal procedure from the very outset, whose great boast has been its plasticity. I shall therefore follow the opinion of Judge McPherson in The Westminster, supra, and hold that rule 6 of the general rules of this court, authorizing all commissions to be executed in accordance with the law of the state of New York, give this court power in a proper case to issue a commission upon oral interrogatories.

[2] As to the propriety of granting an oral commission a different question arises. It seems to me eminently fair that the claimants shall have a chance to examine, and indeed to cross-examine, those who were present at the wreck, if in the petitioner's employ at the present time. It is true that they have been twice examined, but not by the claimants. It is a great disadvantage to be required to examine on written interrogatories witnesses to an event like this, who are in the employ of the other side. The very fact that they have once been examined makes it very important to call to their testimony what they have already said, if the story varies, and their best recollections may often be brought out only by those questions which prior answers themselves elicit. Fur-

thermore, the occasion was itself one of great confusion and terror, of which accurate details are not likely to remain. I can see no just rea-. son why a certain number of the named witnesses should not be so examined, who were all of the ship's company and are the following:

Joseph Bruce Ismay.                Charles H. Lightoller.
Joseph G. Boxhall.                 Frederick Fleet.
G. Symons.                         G. A. Hogg.
Robert Hichens.                    Archie Jewell.
Archibald R. Lee.                  Hugh Woolner.
Frederick Barrett.                 Joseph Scarrott.

As to Lord and Evans, of the Californian, and Balfour, of the Baltic, they are only called to prove the sending of marconigrams and the answer received. It is clear that there would be no need of their oral examination, except for the fact that they were then on ships owned by the petitioner or an allied company. That fact does not, in my judgment, render it at all necessary that they should be orally examined upon a single communication, reduced to writing at the time, or its answer, unless it should appear, for some reason not yet manifest, that there is some ground to expect that they will disown their previous testimony.

There are, besides, several witnesses mentioned in the affidavits whom surely it is unnecessary to examine orally. Their testimony is either of an expert kind, like Sir Ernest Shackelton and James Henry Moore, or as to the structure and equipment of the ship, like Mr. Sanderson and Mr. Wilding, or, they are those who sent messages to the Titanic from vessels not owned by the petitioner, or any allied line, men who are certainly accessible for examination and can have no inducement to hide anything. It was always my own custom with friendly witnesses to learn in advance just what their testimony would be and to shape the interrogatories upon it, and I could never see any objection to that practice. The following are such witnesses:

James Henry Moore.                 Harold A. Sanderson.
Edward Wilding.                    Stanley Howard Adams.
Joseph Barlow Rawson.              George Elliott Turnbull.
Sir Ernest Shackelton.            James C. Barr.

Signor Marconi is in this country now, and may be examined de bene esse.

A third part of the witnesses I know nothing about. They are mere names appended to Mr. Betts' affidavit, and I have no means of judging whether justice requires their oral examination. They are the following:

Harold S. Bride.                   Thomas Jones.
Herbert S. Pitman.                 Walter John Perkis.
Harold G. Lowe.                    Edward John Buley.
George Thomas Rowe.               Geo. Fred Crowe.
Alfred Oliver.                     C. E. Andrews.
Frank Osman.                       Frederick Clench.
Edward Wheelton.                   E. J. Moore.
W. H. Taylor.                      John Poingdestre.
George Moore.                      Thomas P. Dillon.

The great interests here involved justify the expense of an oral commission, but the petitioner should be protected from repeated applications. Therefore the order will allow any claimant to join in and examine under this commission, and will provide that he may use the testimony in his own case. Moreover, the order granting a commission, with this provision, will be sent to every claimant at least 20 days before the date fixed for the first examination. If the claimants take no steps to join in these examinations after such a notice, it is hardly possible that the court will consider any future application for similar relief.

Any witness who is mentioned of those to be orally examined may be excluded from the commission who is now on a ship plying regularly back and forth from the port of New York, provided the petitioner give notice where and when he will be at the disposal of the applicants for examination de bene esse.

The claimants may have a dedimus potestatem on written interrogatories for all those witnesses whom they do not examine orally, including Mrs. Lines.

Settle order on notice.