**BRANYAN v. KONINKLIJKE LUCHT-VAART MAATSCHAPPIJ.**

**BARROWS v. KONINKLIJKE LUCHT-VAART MAATSCHAPPIJ.**

**GRATKE v. KONINKLIJKE LUCHTVAART MAATSCHAPPIJ.**

**WERKLEY v. KONINKLIJKE LUCHT-VAART MAATSCHAPPIJ.**

United States District Court
S. D. New York.
Jan. 20, 1953.

See also, D.C., 13 F.R.D. 334.

Theodore E. Wolcott, New York City, for plaintiffs.

Condon & Forsyth, New York City, George Foster, Jr., New York City, of counsel, for defendant.

WEINFELD, District Judge.

The plaintiffs, in four separate actions commenced against the same defendant, move pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. for the issuance of letters rogatory, directed to the Courts of India, for an oral examination and cross-examination of thirty-seven named witnesses and for the production of books, papers and records in their control.

The plaintiffs in each action are the widow and children respectively of four American journalists who were killed while passengers in an airplane owned and operated by the defendant, which crashed near Santa Cruz Airport, Bombay, India. All forty-five persons aboard, passengers and crew, perished in the disaster.

In each action damages are sought for the wrongful death of plaintiffs' respective decedent upon a claim of negligence and wilful misconduct on the part of the defendant. Other causes of actions are alleged, based upon the laws of India which authorize damages in aircraft death actions unless the defendant proves that it has taken the necessary steps to avoid the damage.

The defendant, in addition to a denial of either negligence or wilful negligence, sets up the Warsaw Convention in limitation of liability and as a further defense alleges that the accident was due solely to erroneous directions and instructions received and followed by the pilot and crew of the airplane from the personnel of the Government of India in charge of the supervision, direction and control of all landing operations at the Bombay airport while the plane was approaching that airport. Since the defendant did not operate into India it had obtained special permission from the Indian Government to make the trip into, and to land in, Bombay.

Immediately after the crash an on-the-spot investigation was conducted by an official commission appointed by the Indian Government on which the defendant and the Dutch Government were represented. The Accident Investigation Commission examined eyewitnesses and experts. Testimony was taken at both New Delhi, the point of last departure, and the airport near Bombay, where the plane had crashed. The Commission viewed the scene of the disaster, the terrain, and inspected the wreckage. At New Delhi it interrogated witnesses as to the adequacy and accuracy of the route and airport information carried by the ill-fated crew, the nature of the briefing and information given to them as to the terrain, unusual weather conditions and other obstacles which might be encountered at the landing airport. At Bombay the inquiry, in addition to questioning of eyewitnesses, extended to control tower personnel; examination of the records of radio contact between the ground and the airplane; the experience and procedures of various lines operating into Bombay; the condition of the aircraft's communication equipment; the en route and terminal conditions and records, and the special conditions alleged to obtain at the landing airport area by reason of the rainy monsoon season. Testimony was also received as to the various maneuvers made by the plane about the air field immediately before the crash by the crew which allegedly was unfamiliar with the air field, the terrain and local weather conditions.

The letters rogatory seek to take the oral testimony of the witnesses who were examined during the course of the official inquiry. Also sought to be examined and marked in evidence are a great number of documents now in the possession of the Indian Government, including radio operator's log, record of messages received and sent while the airplane was in flight, and other records of the airplane recovered from the wreckage, tower logs, photographs and sketches of the accident, meteorological reports, weather maps, summaries and records of various Governmental agencies involved.[1]

1. Cf. Pekelis v. Transcontinental & Western Air, 2 Cir., 187 F.2d 122, 127, 23 A.L.R.2d 1349.

Rule 28(b) of the Federal Rules of Civil Procedure provides that:

"* * * A commission or letters rogatory shall be issued only when necessary or convenient * * *."

This provision has been held to be "a restatement of the interdiction of long standing that letters rogatory should not issue if the deposition may be had on notice or by commission."[2] Thus, an applicant must show that the other methods, i. e., by notice or commission, are inadequate or ineffective to obtain the desired testimony.[3]

The moving papers satisfactorily establish that the testimony cannot be obtained by either of the foregoing methods. The majority of the witnesses to be examined are Indian Government officials or employees. Communications received from a judicial representative of the Indian Government and addressed to plaintiffs' attorney at the direction of the High Court of India indicate that the appropriate procedure to obtain the testimony of these witnesses is for our Courts to issue a letter of request (letters rogatory) to the Indian High Court, which will cause a commission to issue for the taking of evidence and appoint a commissioner with authority to examine the witnesses and to compel the production of required documents by summons or subpoena. The Director General of Civil Aviation in India states that upon compliance with this procedure he will produce all the documents and exhibits of the investigation and that all witnesses who were examined during the course of investigation will appear.

Our Department of State acknowledges that the only feasible means of obtaining the testimony of Government employees and the production of official records is by the use of letters rogatory rather than by commission or notice to a Consular office. Thus, at least as to the procedural necessity of letters rogatory, plaintiffs have met the requirements of Rule 28(b). The Department also states its willingness to transmit through the diplomatic channels to the Indian Government letters rogatory with appropriate instruction and explanation.

The defendant resists the application on further grounds. It urges that plaintiffs have failed to make out that strong case of necessity required before the Courts will act favorably upon an application for letters rogatory to examine witnesses upon oral questions rather than by written interrogatories.[4] The necessity here referred to by the defendant suggests that plaintiffs are required to show good cause to dispense with written interrogatories. In my opinion the plaintiffs have sustained this burden and the papers abundantly establish that the interests of justice will best be served by an oral examination of the witnesses, rather than by written interrogatories.[5] Plaintiffs, to overcome the limitation of liability under the Warsaw Convention, must establish "wilful misconduct" on the part of the defendant.[6] This imposes upon them a heavy burden and only the most searching examination of all attendant circumstances of the accident may unearth the information to support their contentions. The matters to be inquired into, which were the subject of the investigation alluded to above, are technical and complex and only a follow-up questioning procedure face-to-face with the witnesses,[7] many of them alleged to be unwilling, may lead to those essential facts, if indeed they exist at all, upon which plaintiffs must rely to support the claim of "wilful negligence."[8] The many reported deci-

2. The Edmund Fanning, D.C., 89 F.Supp. 282, 283–284.

3. Moore's Federal Practice, 2nd Edition, Volume 4, § 28.06.

4. See Ali Akber Kiachif v. Philco International Corp., D.C., 10 F.R.D. 277.

5. See Deery v. Byrne, 120 App.Div. 6, 104 N.Y.S. 836.

6. Pekelis v. Transcontinental & Western Air, 2 Cir., 187 F.2d 122; 65 C.J.S., Negligence, § 9; Goepp v. Overseas Airlines Inc., App.Div., First Department, 117 N.Y.S. 276.

7. Lago Oil & Transport Co. v. United States, D.C., 97 F.Supp. 438.

8. V. O. Machinoimport v. Clark Equipment Co., D.C., 11 F.R.D. 55.

sions involving airplane accidents reveal that the proper preparation and presentation of such a case involve matters of a complicated technical nature and require the benefit of expert guidance. What was said in a suit involving an airplane accident when the defendant contended that the plaintiff had failed to show good cause for the production of documents is pertinent here.

"The plaintiffs have no knowledge of why the accident happened. So far as such knowledge is obtainable, the defendant has it. When the airplane crashed, it was wrecked and much of the evidence of what occurred was destroyed. Only persons with long experience in investigating airplane disasters could hope to get at the real cause of the accident under such circumstances." [9]

There is an added factor which warrants the oral examination of witnesses. The on-the-spot investigation was participated in by the defendant and the Dutch Government. Thus, the defendant immediately after the accident had the opportunity and benefit of direct and oral questioning of eye and expert witnesses in the absence of the plaintiffs, whose right to recover may well turn on answers then given which may conceal, even though unintentionally or inadvertently, more than they reveal. Since the defendant already has had the advantage of participating in an oral examination of the witnesses called upon the official inquiry, it seems a matter of simple justice that the plaintiffs, who at that time were in no position to appear or take part therein, also be afforded an equal opportunity and the same effective means to ferret out the facts. It may be assumed that the investigation was conducted with impartiality; yet an examiner whose primary objective is to establish wilful misconduct or gross neg-

ligence may, by a dogged probing, succeed in exposing matters which are more informative than the previous testimony of a witness. Written interrogatories would hardly be adequate to bring forth those precise facts and sharp details which may possibly lead to or establish the evidence to support plaintiffs' heavy burden of proving wilful negligence. The disadvantage of examining witnesses as to the basic facts and causes of an airplane disaster by means of written interrogatories is evident.[10]

" * * * [I]n a case like this, in which seemingly trivial things may, to the expert, furnish important clues as to the cause of the accident, the plaintiffs must have accurate and precise firsthand information as to every relevant fact, if they are to conduct their examination of witnesses properly and to get at the truth in preparing for trial." [11]

The request for oral examination receives additional support from the affirmative defense that the accident was caused by erroneous directions issued to the pilot and crew of the airplane by the Indian Government personnel controlling landing operations. This defense, if sustained, would tend to defeat plaintiffs' claim that the defendant was chargeable with wilful misconduct. Plaintiffs should be permitted a full and unrestricted examination of those officials allegedly responsible for the accident and whose conduct, according to the defendant, would tend to exonerate it from liability.

The defendant also urges that written interrogatories will suffice since it has already answered fifty-six interrogatories pursuant to Rule 33, one hundred eighty-one requests for admissions served pursuant to Rule 36, and the oral testimony of three of its operating personnel was taken pursuant to Rule 30. The scope of the lat-

9. Chief Judge Kirkpatrick in Brauner v. United States, D.C., 10 F.R.D. 468, 470–471, affirmed 3 Cir., 192 F.2d 987.

10. Cf. The Titanic, D.C., 206 F. 500, where Judge Learned Hand at the District Court authorized oral examination of witnesses under a commission in connection with the sinking of The Titanic.

11. Brauner v. United States, D.C., 10 F. R.D. 468, 471.

ter examination related principally to operational methods of the defendant rather than to the specific facts of the accident. But, more important, the various deposition-discovery sections of the Rules of Federal Civil Procedure are complementary to one another and the use of one does not restrict the further use of another on the same subject.[12]

The plaintiffs have fully established the necessity for the oral examination of the witnesses under the letters rogatory.

There remains the inevitable question of counsel fees and expenses. The defendant, naturally, urges that if the application of plaintiffs is granted, it should be at their expense and that such expense should be secured to the defendant in advance. It relies upon various cases which have made just such a disposition[13] and also on Rule 4 of the Civil Rules of this District, which provides that when a proposed deposition upon oral examination is sought to be taken under Rule 30(b) of the Federal Rules of Civil Procedure, the Court may provide in the order therefor, or impose as a condition of denying the motion to vacate a notice thereof, that "prior to the examination the applicant pay the expense of the attendance at the place where the deposition is to be taken of one attorney for the adversary party * * * including a reasonable counsel fee." Amounts so paid are a taxable disbursement in the event the applicant for the examination recovers costs for the action.

The provision makes it clear that the matter is one in the Court's discretion and so each application must be determined upon its own facts and equities. The journalists who were killed were not engaged in any commercial or private activity. They were guests of the Dutch Government (which owns 50% of the stock of the defendant airline) and were travelling in what appears to be a good-will tour as part of a public relations program initiated by the Dutch Government with respect to conditions in Indonesia, then in a state of unrest. Presumably, a purpose of the trip was to secure a presentation to the American public through the writings of the journalists of the Dutch Government's position—a presentation of all the facts rather than a distorted picture. Transportation from the United States to Indonesia had been arranged for the decedents on the defendant airline and the crash occurred on the return trip of the mission.

Conditions which obtain with respect to defendant reduce the burden of usual expense. The defendant maintains a regular schedule from New York to Karachi, Pakistan, which is the nearest point on its line to Bombay and New Delhi. Section 403(b) of the Civil Aeronautics Act, 49 U.S.C.A. § 483(b), permits air carriers to issue free or reduced transportation to "witnesses and attorneys attending any legal investigation in which any such air carrier is interested * * *." There are times of the year when empty seats are available. If the defendant's New York attorneys deem it desirable to attend the examination, it would involve little, if any, expense for airplane travel to Karachi.

As to other items of expense, such as hotel accommodations, meals and incidental items, travel from Karachi to India and throughout India, and counsel fees, these need not necessarily be incurred. The defendant has far-flung interests which extend close to the scene of the accident and in New Delhi. It has legal representatives and local counsel in India, and the moving papers suggest, and it is not denied, that they have been active in this matter since the time of the crash. Indeed, this hardly can be questioned in view of the participation by the defendant's and the Dutch Government's representatives in the investigation. Thus, it would appear that the defendant's interests would be amply protected by local counsel. Little expense need be incurred in this respect. However, it is

12. V. O. Machinoimport v. Clark Equipment Co., D.C., 11 F.R.D. 55, 60.

13. Wallace v. D. Appleton & Co., 161 F. 884; Boiczuk v. Baltimore & O. R. Co., D.C., 5 F.R.D. 18; Moore v. George A. Hormel & Co., D.C., 2 F.R.D. 340.

430

understandable that New York counsel may want to attend the examination since they will represent the defendant upon the trial, and, as shown, a substantial part of airplane travel expense for them may be eliminated.

■ To impose the full burden of defraying the expense of the defense counsel, as well as their own counsel, may deprive the plaintiffs of the opportunity to secure the evidence necessary to sustain their claim of wilful misconduct on the part of the defendant and to meet the affirmative defense that the Indian Government officials were the cause of the disaster. Considering that the decedents were engaged in a mission of importance to the Dutch Government, a 50% owner of the defendant, and all other factors noted, it appears to me a desirable exercise of discretion that the defendant pay its own expenses. The plaintiffs will be required to defray their own expenses in the taking of the depositions.

■ One item remains. In addition to the thirty-seven witnesses whose oral examination is sought, also included in the list are, "Department of Civil Aviation of India, Bombay and New Delhi. Royal Indian Air Force, Bombay and New Delhi, India; Air India Ltd., Air India International by persons having knowledge of the facts, and other persons presently unknown." This seeks in effect an open commission as to unnamed persons. Such an application is rarely granted.[14] No compelling necessity has been shown therefor. On the contrary, the list of thirty-seven witnesses procured as a result of the investigation, undoubtedly includes all who have any knowledge of pertinent and material facts. There is a question as to whether or not this number should be reduced, but I feel that since plaintiffs will be compelled to carry the burden of their own expense, it will be to their interest, as well as to the defendant's, to limit the examination only to those witnesses whose testimony is essential. Indeed, the plaintiffs state that they do not anticipate that more than twelve will be examined. However, if, during the progress of the examination, it should develop that the testimony of persons other than the named thirty-seven is required and is essential, it should not be a matter of great difficulty, considering rapid means of communication, to apply upon a proper showing for an amendment to the order to be entered to include authority to examine such witnesses.

With respect to the plaintiff Werkley, it appears that that action is dismissed and is now pending on appeal. In view of the dismissal, the plaintiff is not entitled to participate in the letters rogatory, but the Court suggests that an appropriate stipulation be entered into between counsel so that, in the event of reversal on appeal, the benefit of the letters rogatory will be extended to plaintiff in that action.

Settle order on notice.

14. See cases cited in footnote 13, supra. Cf. Moore's Federal Practice, 2nd Edition, Volume 4, § 30.03(6).