**HARVEY ALUMINUM, Inc., et al. v.
AMERICAN CYANAMID
CO. et al.**

United States District Court
S. D. New York.
Sept. 21, 1953.

---

Fischbach & Crowe, New York City, for plaintiffs. Hyman I. Fischbach, Vincent J. Crowe, New York City, of counsel.

**16**

Donovan, Leisure, Newton & Irving, New York City, for defendants American Cyanamid Co. and Berbice Co., Limited. Walter R. Mansfield, New York City, of counsel.

Lundgren, Lincoln, Peterson & McDaniel, New York City, for defendant Reynolds Metals Co. Walter C. Lundgren, New York City, and Walter L. Rice, Richmond, Va., of counsel.

WEINFELD, District Judge.

These motions, one by plaintiffs for leave to dismiss this action under Rule 41(a)(2) of the Federal Rules of Civil Procedure, 28 U.S.CA., nunc pro tunc as of January 20th, 1953, and the other by the defendants for an order enjoining the plaintiffs from instituting or prosecuting any other action against defendants in British Guiana or elsewhere involving the same issue and subject matter, follow in the wake of a ruling by the Court of Appeals on defendants' appeals from two orders. 2 Cir., 203 F.2d 105.

The Court reversed an order of the District Court which denied defendants' motion to vacate plaintiffs' notice of voluntary dismissal under Rule 41(a)(1), dated January 20th, 1953, and gave leave to plaintiffs to move to dismiss the action under Rule 41(a)(2). Also reversed was the denial of defendants' motion for an injunction similar in scope to that now sought in their present application. The basis for the latter reversal was the Court of Appeals' view that presumably the denial was not in the exercise of discretion but was based on the fact that the District Court regarded the action as no longer pending in view of the attempted dismissal under Rule 41(a)(1), and accordingly the matter was remanded for hearing and determination.

Since the same essential facts in large measure govern the disposition of both motions a review of the history of the litigation to date is in order. The action was commenced on December 5th, 1952, by Harvey Aluminum, Inc. against American Cyanamid Company (here-after called "Cyanamid") for specific performance of an alleged agreement for the sale of tangible assets of Berbice Company, Limited (hereafter called "Berbice"), located at British Guiana and utilized for the processing and mining of bauxite ore from lands leased from the British Crown. Berbice, a wholly owned subsidiary of Cyanamid, is a corporation organized under the laws of the Colony of British Guiana.

Upon the filing of its original complaint, plaintiff moved for an injunction pendente lite enjoining the sale or transfer of the said assets to anyone other than the plaintiff. After a four-day hearing the motion was denied by Judge Sugarman. During the course of the hearing, Harvey Machine Co., Inc. was added as a party plaintiff and Berbice was added as a party defendant. The plaintiff then served an amended complaint adding as a defendant Reynolds Metals Company (hereafter called "Reynolds"), to whom the tangible property was about to be, and was in fact, transferred, to have it declared a trustee ex maleficio of the property because of alleged tortious interference with plaintiffs' contractual relations with defendant Cyanamid. All three defendants, Cyanamid, Berbice, and Reynolds have appeared in the action. Except for Berbice, all the other litigants, plaintiffs and defendants, are American corporations.

Plaintiffs on December 17th, 1952, filed an appeal from the order denying their motion for a preliminary injunction, but the appeal has been abandoned on the ground that the transfer of the property to Reynolds rendered it moot.

On January 16th, 1953, the defendants moved by order to show cause returnable January 20th, for an order enjoining the plaintiffs from instituting legal proceedings elsewhere involving the same issues as those in the present action. One day prior to the return of the order to show cause, the plaintiffs served a notice of voluntary dismissal of the action under Rule 41(a)(1), which de-

fendants promptly moved to vacate. This motion to vacate, as well as the defendants' motion for an injunction against other actions, were denied by Judge Clancy on January 20th, 1953, whereupon defendants appealed, resulting in the reversals already noted.

Pending the determination of the appeal the Court of Appeals enjoined the plaintiffs from instituting or prosecuting any action against the defendants in British Guiana involving the same issues. It appears that in addition to the tangible assets transferred to Reynolds, Berbice had also agreed to transfer to it with requisite consent, certain Crown leases, mining leases, exploration and development rights which plaintiffs contend Berbice had originally undertaken to transfer to them or to surrender its rights with respect thereto. These leaseholds and permissions, unlike the tangible assets, can be transferred to a proposed lessee only with the consent of the British Guianan Government in conformity with its laws and regulations. Such proceedings to obtain the Crown's consent were commenced in British Guiana by Reynolds and Berbice immediately following the restraint imposed by the Court of Appeals against the plaintiffs bringing any other suit with respect to the property in question. Thereupon, the Court of Appeals modified its previous stay to permit the plaintiffs to oppose the defendants' application for such governmental consent. The opposition necessarily took the form of an action instituted on February 21st, 1953, by the plaintiffs against Reynolds and Berbice in the Supreme Court of British Guiana.[1] While the proceedings in the colony are stated to be limited in scope, the plaintiffs contend that the determination of the issues in that litiga-

tion will be res judicata of the entire controversy. It is noted that Cyanamid was and is not a party to that suit.

The defendant Reynolds, notwithstanding plaintiffs' notice to dismiss this action under Rule 41(a)(1) and while the appeal from the denial to vacate the dismissal was sub judice, served an amended answer on February 24th, 1953, asserting a counterclaim for a declaratory judgment on the same issues presented in plaintiffs' original action and a cross-claim against Cyanamid in the event plaintiffs were successful. On March 14th, 1953, the Court of Appeals handed down its reversal of the order but gave leave to plaintiffs to move under Rule 41(a)(2), their present motion, which was not made until June 11th, 1953.

Rule 41(a)(2) provides: "Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

The plaintiffs frankly concede that in the event their motion is granted they intend to institute another action in British Guiana upon the same issues as those involved in this action and also to apply for a receivership of the properties in British Guiana based upon a claim

---

1. Under Regulation 13 of the Crown Land Regulations, 1919, of British Guiana, one opposing an application for a transfer must give notice of opposition within seven days after publication of the last notice for consent to transfer, and within seven days thereafter commence legal proceedings to enforce his opposition; otherwise such opposition shall be no bar to transfer. The regulation further provides that the transfer shall not be approved until the opposer has withdrawn his opposition or his claim has been rejected by a court of law.

that since Reynolds has been in possession of them they have been permitted to go to rack and ruin—a charge hotly denied by Reynolds. Another factor motivating plaintiffs' purpose to commence anew is their view, likewise disputed by the defendants, that the laws of British Guiana are more favorable to plaintiffs' claim on the issue of the Statute of Frauds. Plaintiffs' motion for a preliminary injunction was denied by Judge Sugarman chiefly on the ground that the only document offered by plaintiffs as a memorandum of the alleged contract appeared to be insufficient to satisfy the New York Statute of Frauds. Personal Property Law, McK.Consol. Laws, c. 41, § 31.

■ Under Rule 41(a)(2) the Court's discretion is invoked. The essential question is whether the dismissal of the action will be unduly prejudicial to the defendants; if so, plaintiffs' motion should be denied. If not, it should be granted upon such terms and conditions as are fair and just. As a general rule, a litigant should be permitted to discontinue his action upon appropriate terms even where his avowed purpose is to commence a new litigation upon the same issues in a forum allegedly more favorable to his claim.[2] However, the right to withdraw the suit is not unrestricted. Where it is clear that the opposing litigant will be unduly prejudiced by the dismissal of the action, the Court's discretion should be refused. But the mere fact that a party will be faced with another litigation does not of itself constitute prejudice; otherwise an initial error of judgment on the part of his counsel may preclude a determination of a claim upon its facts and merits. Undue vexatiousness, undue burden to a litigant in presenting his defense or claim in another jurisdiction, excessive and duplicitous expense of a second litigation, the extent to which any judgment in the new action would be conclusive as to issues and parties as contrasted to a final determination in the pending suit, the extent to which the current suit has progressed, are some of the factors to be considered in deciding whether prejudice will result to the opposing party.

■ Upon a careful review of the entire record in this action, the very voluminous affidavits submitted on these motions, and the record of the consent and opposition proceedings thus far had in British Guiana, I am persuaded that matters have progressed here to such a point that a dismissal of this action would be unduly prejudicial to the defendants and that the imposition of terms would not overcome such prejudice. To protect their rights and interests in a new action in a foreign jurisdiction would impose an onerous and burdensome task upon the defendants far beyond that encountered in ordinary litigation. Accordingly, in the exercise of discretion, plaintiffs' motion under Rule 41(a)(2) should be denied. Substantially the same factors warrant the granting of the defendants' motion to restrain plaintiffs from bringing any new action upon the same issues presented in the current suit:

(1) This Court has acquired jurisdiction in personam over all parties. With Cyanamid, Berbice, Reynolds and both Harvey companies subject to this Court's jurisdiction, and with plaintiffs' claim, Reynolds' counterclaim and cross claim embracing all matters in controversy amongst the parties, full and complete relief can be granted in favor of whichever party is successful—and all would be concluded by the judgment. Thus, if plaintiffs prevail this Court can issue a decree directing the defendants Reynolds and Berbice to take all necessary steps and execute all documents required to vest plaintiff with possession

2. Cf. Jones v. Securities & Exchange Commission, 298 U.S. 1, 19, 56 S.Ct. 654, 80 L.Ed. 1015; Wilson & Co., Inc. v. Fremont Cake & Meal Co., D.C., 83 F. Supp. 900, 907.

and enjoyment of the Berbice properties and to withdraw the application for the consent of the British Government to the transfer. Conversely, if it were found that defendants were entitled to judgment, the Court here could command the plaintiffs to withdraw their opposition to the transfer of the properties to Reynolds.

The plaintiffs urge that regardless of who is successful here, it will still be necessary for that party to obtain the consent of the Governor or Governor in Council in British Guiana under the Crown Land Regulations of that country. This is true. But it is also true that a judgment of the Supreme Court of British Guiana involving the same issues as those presented here will not eliminate the necessity of obtaining the required governmental consent. Such consent represents executive discretion and the Governor in Council acts free of any judicial direction. As much is conceded by all the parties. It is also acknowledged that whereas the Governor may withhold or grant such consent in his discretion, he has already indicated that it will be given in favor of whichever party succeeds.

In contrast to the complete jurisdiction of this Court over all the parties and issues, Cyanamid with whom plaintiff alleges it made the contract sued upon is not a party in the opposition suit in British Guiana nor is it amenable to process there. Further, Harvey Machine Co., Inc. was stricken as a party plaintiff—and finally only two of the leases in dispute are involved in that action.

(2) The contract upon which plaintiffs base their claim was made in New York. That any agreement such as plaintiffs allege was reached is vigorously disputed by representatives of defendants who participated in the negotiations. In view of this sharp conflict, trial by deposition should be avoided. The most satisfactory manner of evaluating the testimony of the respective witnesses is by oral examination so that the trier of the fact, face to face with the witnesses, can observe their demeanor, manner, and conduct.[3] Most, if not all, the witnesses are residents of the United States. There appear to be 21 witnesses, many of them key executives of the defendants, whose testimony is essential. It would be necessary for these witnesses to travel a distance of 3,000 miles to British Guiana under difficult and inconvenient traveling conditions and to remain there for an indefinite period under unsatisfactory living conditions. More than half of them are essential to the operation of their respective companies. As against the disadvantages of a trial in British Guiana, any possible inconvenience or disadvantage to plaintiffs or their witnesses in permitting the pending suit to continue appears to be slight. Those of plaintiffs' witnesses who appear to have direct knowledge of the matters in controversy are all residents of the United States. While there is a reference in plaintiffs' affidavits to witnesses resident in British Guiana, it has not been shown in what respect their testimony is necessary or material.

(3) Plaintiffs dispute that New York law is applicable to the leasehold and development rights, contending that these are governed by the laws of British Guiana. Defendants to the contrary contend that the contract as alleged by plaintiffs is entire and indivisible, relating to both realty and personalty, and if unenforceable with respect to the personal property under the New York Statute of Frauds is unenforceable in its entirety.[4] Obviously, if New York law is

---

3. Cf. Dyer v. MacDougall, 2 Cir., 201 F.2d 265, 268–269; N. L. R. B. v. Dinion Coil Co., 2 Cir., 201 F.2d 484, 487–490; Branyan v. Koninklijke Luchtvaart Maatschappij, etc., D.C., 13 F.R.D. 425.

4. Burns v. McCormick, 233 N.Y. 230, 135 N.E. 273; George v. Dobson, 261 App. Div. 447, 25 N.Y.S.2d 817, affirmed, 287 N.Y. 675, 39 N.E.2d 292; In re Buehler's

to be applied, the Courts here are in a better position to apply it. But if British Guiana law governs with respect to the development rights, it seems simpler and more desirable to obtain the testimony here of two or, if necessary, more legal experts of British Guiana than to transport 21 witnesses to British Guiana.

(4) Excessive, unnecessary, and duplicitous cost of defending a second litigation would be imposed upon the defendants. To date, their expenses in defending the instant suit are stated to be $84,000 of which $73,000 represent legal fees. If a new action were commenced in British Guiana a substantial portion of the legal fees will have been wasted. The estimated cost of transportation of witnesses, living expenses, loss of salaries and other items required to defend a second suit in British Guiana is in excess of $55,000 and does not include necessary additional legal fees. Imposing heavy additional expenses is unwarranted particularly when considered against the purchase price of $400,000 under the alleged agreement.

■ (5) An early trial is more likely here than in British Guiana. Both Harvey Machine Co., Inc. and Reynolds and Berbice have appealed from the disposition made by the Supreme Court of British Guiana which struck Harvey Machine Co., Inc., as a party plaintiff and denied the defendants' motion to dismiss as to Harvey Aluminum, Inc. It is unlikely that these appeals will be heard and disposed of earlier than in 1954. A trial of any new suit will take at least two and one-half to three years to be reached and disposed of. The counterclaim interposed by defendant Reynolds affords the basis for a preference and a prompt trial here.[5]

■ (6) Plaintiffs would be at no disadvantage in continuing with their suit in this district. Citation hardly seems necessary for the proposition that the denial of the plaintiffs' motion for a restraining order pendente lite does not affect the final determination of the issues upon a trial on the merits. Since the denial of their motion plaintiffs assert that knowledge has come to them of a cablegram sent by one official of Berbice to another, as well as other documentary proof to establish acts of performance on the part of Berbice. These, if of the import ascribed to them, may be sufficient to meet the requirements of the New York Statute of Frauds.[6]

(7) The charge that the Reynolds' management of the Berbice properties has been so inept and wasteful so that there is compelling need to institute a new action and to apply for the appointment of a receiver appears to be rebutted by the mining production record since Reynolds has been in possession. The opposing affidavits specifically meet and negate the charges of waste, neglect and mismanagement. Reynolds is committed to an extensive rehabilitation program to the present plant involving an expenditure of $250,000. Moreover, Reynolds is unquestionably financially sound and should it eventuate that plaintiffs are entitled to succeed, Reynolds would be called upon to respond for any damages.

■ Under all the foregoing circumstances, I am persuaded that the plaintiffs should be enjoined from instituting any action or applying for the appointment of a receiver in British Guiana or elsewhere. However, the injunction shall not be deemed to affect the action instituted by plaintiffs in British Guiana to enforce their opposition to de-

---

Estate, 186 Misc. 306, 59 N.Y.S.2d 766; Id., 272 App.Div. 757, 70 N.Y.S.2d 139.

5. Rule 57 of the Federal Rules of Civil Procedure. See also Rule 11, District Court Calendar Rules.

6. Cf. Transit Advertisers v. New York, New Haven & H. R. Co., 2 Cir., 194 F.2d 907.

fendant Reynolds' application for governmental consent to the transfer of certain of the leaseholds. That suit was precipitated by Berbice's and Reynolds' application for such governmental consent. As long as the defendants continue the recordation proceedings there, the plaintiffs should be free to proceed with their action to enforce their opposition thereto; otherwise, such rights as plaintiffs may have in the event they succeed in establishing the alleged agreement may be waived or effected. While the defendants deny that the suit by plaintiffs to enforce their opposition is necessary for the protection of their rights, the fact is that defendants' motion to dismiss the action was denied. Judge Stoby of the Supreme Court of British Guiana in denying defendants' motion to dismiss stated that under the Crown Lands Regulations an opposer who complies with the Regulations as to opposition is in effect entitled to an injunction against the transfer however fictitious the claim may eventually prove to be. There is no reason why the plaintiffs should be denied this right. Moreover, upon a further hearing in this matter the Court was advised that during the pendency of the opposition suit Reynolds has been mining the properties and no obstacles appear to prevent a continuation of such activities until a final determination.

■ One other item remains for consideration. Berbice is in voluntary liquidation in British Guiana, the proceedings having been instituted shortly after the commencement of this suit. Plaintiffs charge that in the event of judgment in their favor they will be deprived of available assets against which to satisfy any recovery against that defendant. The liquidator of Berbice submits an affidavit wherein he states that

he would consider himself bound to obey any mandate of this Court unless restrained by an order in the Supreme Court of British Guiana, which he deems unlikely. Although Berbice has submitted itself to the jurisdiction of this Court, it is doubtful that the liquidator is amenable to this Court's process without an order of the foreign court authorizing him to appear in this action and to submit to the jurisdiction of this Court.[7]

■ It appears that there are no creditors of Berbice other than Cyanamid, its sole stockholder. Plaintiffs, of course, are potential creditors of Berbice based upon the claim asserted in this action. No reason has been advanced for its voluntary liquidation. Its status quo should be preserved during the pendency of this suit. In any event, the liquidator states that he will be unable to complete the liquidation until the litigation between plaintiffs and Berbice is terminated. Since the proceedings are voluntary, a condition of the granting of the stay against plaintiffs' commencing any new action is that Berbice shall take all necessary steps to stay further liquidation proceedings pending final determination of this action. The condition may be avoided if Cyanamid which owns all the stock of Berbice, will guarantee full and complete payment of any judgment and performance of any decree which may be entered against the latter.

The alternative motion of the plaintiffs for an extension of time to plead with respect to the amended answer of Reynolds is granted.

The order to be entered hereon shall also contain an appropriate provision indicating plaintiffs' withdrawal of their motion to amend and to resettle the or-

7. See Relfe v. Rundle, 103 U.S. 222, 225, 26 L.Ed. 337; Great Western Mining & Mfg. Co. v. Harris, 198 U.S. 561, 574–575, 25 S.Ct. 770, 49 L.Ed. 1163; McCandless v. Furlaud, 2 Cir., 68 F.2d 925, 927. See also Pendleton v. Russell, 144 U.S. 640, 12 S.Ct. 743, 36 L.Ed. 574; Rodgers v. Adriatic Fire Insurance Co., 148 N.Y. 34, 42 N.E. 515.

der of Judge Clancy dated January 20th, 1953, to indicate the denial was made in the exercise of discretion.

Settle order in accordance with the foregoing.